LOVIE T. WHARTON, ADMINISTRATRIX, v. NEW YORK LIFE INSURANCE COMPANY.

(Filed 1 October, 1919.)

1. **Insurance, Life — Policies — Contracts — Suicide — Defenses—Burden of Proof—Instructions—Jury—Trials.**

   The burden is on the defendant life insurance company, in an action on the policy, to show that the deceased insured committed suicide which invalidated the policy, according to its terms, when this is relied upon as a defense, which will take the case to the jury upon the issue.

2. **Insurance, Life — Policies—Contracts—Accidents—Passengers—"Traveling."**

   Where there is a liability under the provisions of a policy of life insurance, "when the death of the insured was caused directly by accident while traveling as a passenger by common carrier," the fact that the insured was accidentally killed at an intermediate station, after he got off the train until it should start again, and while attempting to board it to continue his journey, does not deprive him of his status as a passenger under the provision of the policy, or avoid liability on the part of the company.

**3. Clerks of Court—Executors and Administrators—Granting of Letters— Actions—Collateral Attack—Jurisdiction—Appeal and Error.**

Where the clerk of the Superior Court has issued letters testamentary upon sufficient evidence, his action in doing so cannot be collaterally attacked, to oust jurisdiction, in the administrator's action, as such, to recover upon an insurance policy, but only before the clerk to cancel the letters; nor can it be raised for the first time in the Supreme Court, on appeal, when it has not been pleaded, and upon exception to a refusal of defendant's motion to nonsuit.

APPEAL by defendant from *Daniels, J.,* at April Term, 1919, of PAMLICO.

This was an action on a $5,000 insurance policy on the life of Raymond M. Wharton, with the following additional provision: "Or double the face of this policy upon receipt of due proof that the death of the insured was caused directly by accident while traveling as a passenger on a street car, railway train, steamboat licensed for transportation of passengers, or other public conveyance operated by a common carrier." And with the further provision: "In event of self-destruction during the first two years, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premium thereon which has been paid to and received by the company and no more."

The defendant set up the defense that "the death of plaintiff's intestate was caused by his own act of self-destruction." The jury found the issues as follows:

1. Was the death of the said Raymond M. Wharton caused directly by accident while traveling as a passenger on a railroad train operated by a common carrier. Answer: "Yes."

2. Was Raymond M. Wharton's death due to self-destruction? Answer: "No."

3. In what amount, if any, is defendant indebted to the plaintiff? Answer: "$10,000, with interest from 20 June, 1917, at the rate of 6 per cent per annum, until paid."

Judgment accordingly. Appeal by defendant.

*Z. V. Rawls, D. L. Ward and Ward & Ward for plaintiff.*
*James H. McIntosh, Moore & Dunn and James H. Pou for defendant.*

CLARK, C. J. It is admitted that the plaintiff's intestate, R. M. Wharton, on 3 June, 1917, boarded a train at Greensboro with ticket to Goldsboro, which train was due to arrive in Raleigh at 4:20 a. m. It was also in proof that the deceased bought a thousand-mile book at Greensboro and exchanged 189 miles of it for a ticket to New Bern and rode in the white day coach from Greensboro to Raleigh, and was killed by the same coach as the train was backing out of the Raleigh station

about 4:35 a. m., and that he had on his person the mileage book and coupon from Greensboro to New Bern and was on his way to his farm and home in Pamlico County. It was also in evidence that his family was in Greensboro for the purpose of educating his children and that he had a small grocery store there.

It was also in evidence that he stepped off the coach at Raleigh but remained in the station and was walking up and down on the concrete pavement between the tracks, and was some ten feet from the track when "all aboard" was called; that he was then either standing or sitting on a box and started towards the backing train; that in some way he got on the track between the Pullman and the day coach and was run over and killed.

The defendant offered evidence which it contended should have satisfied the jury that he deliberately crawled under the backing train for the purpose of being run over. The plaintiff offered evidence that it contended should satisfy the jury that the deceased ran to get on the day coach and the door of the vestibule at that end to the Pullman being closed he stumbled or fell and was caught on the track between that car and the Pullman and was run over and killed. They also offered evidence tending to show that the deceased had no motive to commit suicide and that his death was entirely accidental.

This evidence was earnestly discussed here, and doubtless before the jury. The jury, however, found that the death of the deceased was caused by an accident and not as an act of self-destruction. It can serve no purpose to elaborate the testimony for there was evidence tending to sustain the theory that the death was caused by an accident, and the burden of proof was upon the defendant to establish its allegation that the death was deliberate self-destruction. The function of the jury was to determine the fact. The burden of proof being on the defendant to prove its defense, the court could not adjudge that an affirmative defense is proven, for that involves the credibility of the witnesses, which is a matter for the jury. *Spruill v. Ins. Co.,* 120 N. C., 141, and numerous citations thereto in the Anno. Ed. Besides, there was evidence to go to the jury that the death of the deceased was accidental.

This is not a question whether the deceased was guilty of contributory negligence, for if it were conceded that he was this does not of itself prove an intent to commit suicide. The presumption of law also is against self-destruction, and the burden is on the party who is asserting it. The court properly charged the jury that the burden was on the defendant to satisfy the jury by the greater weight of the evidence that the deceased got in the way of the train with the intent to destroy himself, and unless the jury so found to answer the second issue "No."

The court also charged the jury: "If you find from the greater weight of the evidence that Raymond M. Wharton, the deceased, purchased the ticket from Greensboro to New Bern and was proceeding on the journey on the train that killed him, and on the arrival of the train at Raleigh, where it had a stop for some little time prior to its proceeding to Goldsboro, and he got off the train for the purpose of getting a cup of coffee or some breakfast or for any other legitimate purpose, and with the intent to take the same train at the time of its departure and continue his journey, and that at the time the conductor or porter cried 'all aboard' for the departure of the train he was waiting and undertook to get aboard the cars to continue his journey, and in the effort to get aboard he accidentally fell on the track and was thus accidentally injured and died the same day from the effect of the injury so received, you should answer the first issue 'Yes.'" The defendant also excepted to this, but it is correctly stated.

The defendant further contends that as the policy provides liability "when the death of the insured was caused directly by accident while traveling as a passenger," that the deceased having gotten off the train while it was standing in Raleigh, he was not traveling as a passenger at the time. He cites certain cases where it was so held when the accident occurred under a policy which provided that the injury must occur while the passenger is *"riding* on the train." It is not necessary to consider whether this is not too technical (and in fact it has been overruled), for here the language of the policy was altered, perhaps intentionally on account of those decisions, and provides "while the insured is traveling as a passenger."

These words have been construed by this Court in *Wallace v. R. R.,* 174 N. C., 174, which held: "One who has purchased his ticket to his destination on a passenger train does not relieve the railroad of its duty to him as such passenger by getting off the train during its stop at an intermediate station, without notice to its employees or objection from them, to see some person there on business." In that case there is a full and well-considered opinion by *Allen, J.,* who held, with citation of authorities, that while there is some conflict "The better rule, and one supported by the weight of authority, is that a passenger does not lose his rights as such by leaving the train temporarily at an intermediate station for a lawful purpose. 10 C. J., 624; 4 R. C. L., 1040; *R. R. v. Satler,* 64 Neb., 636; *Dodge v. R. R.,* 148 Mass., 207; *Parsons v. R. R.,* 113 N. Y., 355; *R. R. v. Coggins,* 32 C. C. A., 1, and other authorities in the notes to the citations from *Corpus Juris* and Ruling Case Law, *supra."* He becomes a passenger when he goes on the premises for that purpose, and this relation continues till the termination of the contract

of carriage. *Daniel v. R. R.,* 117 N. C., 592, and citation thereto in the Anno. Ed.

The defendant also contends that there is a defect in jurisdiction in that letters of administration were taken out in Pamlico County. The plaintiff testified that at the time of the accident her husband had two homes; that he had been living in Greensboro nearly a year but that his sojourn there was temporary and for the purpose of educating the children; that their house and home were in Pamlico, and she had returned there soon after the death of her husband. The probate court, having found that the plaintiff's home and the residence of the deceased was still in Pamlico at the time of his death, issued letters of administration there, and they cannot be impeached collaterally. The defendant should have moved in that court to cancel her letters in Pamlico if it had sufficient proof. *Reynolds v. Cotton Mills,* 177 N. C., 412.

This point was not made on the trial nor is it presented by any assignments of error. The defendant attempted to raise it here for the first time on his general exception to the refusal of the motion to nonsuit. Had it been pleaded, or even had exception been taken on the trial, the plaintiff would have had opportunity to put on fuller testimony. The objection cannot be raised collaterally when it is not pleaded as a defense. It is not seen that the defendant has been prejudiced in any wise by the action having been brought in Pamlico instead of Guilford.

No error.