ALBERT E. McLEAN v. RUTH STUDTMAN McLEAN.

(Filed 30 January, 1953.)

**1. Divorce § 8a—**

In the husband's action for divorce on the ground of two years separation, G.S. 50-6, defendant alleged that whatever estrangement existed between them was occasioned by plaintiff's own wrongful conduct and willful abandonment.   *Held:* The answer raises matters of defense upon which defendant has the burden of proof, and therefore defendant is not entitled to nonsuit on the issue of separation upon her evidence in support of such defense.

**2. Trial § 22½—**

Nonsuit may not be entered on an issue in favor of the party upon whom rests the burden of proof.

**3. Husband and Wife § 3—**

An antenuptial agreement between the parties that they would separate immediately after the marriage and obtain a divorce is contrary to public policy and void.

**4. Same: Divorce §§ 2a, 9b—**

Where the husband seeks to justify his separation from his wife on the ground of an antenuptial agreement that they would separate immediately after the marriage and obtain a divorce, the court of its own motion should take judicial notice that such agreement is contrary to public policy, and exceptions to the court's charge stating the husband's contentions in this respect will be sustained notwithstanding the absence of objection in the record to his allegations and evidence in support thereof.

**5. Appeal and Error § 6c (6)—**

While ordinarily a misstatement of contentions must be brought to the court's attention in apt time, this is not necessary when the statement of

MCLEAN *v.* MCLEAN.

the contention presents an erroneous view of the law or an incorrect application of it.

**6. Divorce § 2a—**

The fact that plaintiff has married under a mistaken belief that he had obtained a valid decree of divorce may not be considered in determining whether the separation from his wife was due to his own fault.

BARNHILL, J., concurring.

DEVIN, C. J., dissenting.

ERVIN, J., concurs in dissent.

APPEAL by defendant from *Crisp, Special Judge,* at May Civil Term, 1952, of ALAMANCE.

Civil action for absolute divorce from bonds of matrimony on statutory ground of two years separation. Former appeal 233 N.C. 139.

Plaintiff alleges in his complaint:

1. That he is a resident of Guilford County, North Carolina, and has been resident of the State for more than one year next preceding the filing of this complaint, and that defendant is resident of the State of Illinois.

2. That he and defendant were married in Cook County, Illinois, on 16 February, 1933, and lived together as man and wife until 11 October, 1944, when they separated, and have not since then lived together.

3. That there was one child born during the union, who died shortly after birth.

Defendant, answering the complaint of plaintiff, admits that she is a resident of State of Illinois, that she and plaintiff were married as alleged, and that a child was born of the marriage and has died; but she denies all other allegations, expressly denying that they ever "separated" or lived "separate and apart."

And for further defense and bar to this action, defendant avers, and upon the trial in Superior Court offered evidence tending to show that she has in all respects observed her marital vows, duties and obligations to plaintiff, and has done nothing to justify plaintiff separating himself from her, but that if his absence under the circumstances detailed constitutes legal separation, then such separation and living separate and apart were without her consent or fault, and are the direct result and constituent part of the abandonment and desertion of her by plaintiff without any cause. And defendant expressly pleads abandonment and desertion and the conduct of plaintiff, in manner stated, as a defense and bar to this action.

On the other hand, plaintiff replying to the further defense set up by defendant alleges among other things "that it was agreed between the plaintiff and the defendant at the time of their marriage that they could not and would not live together as husband and wife."

McLean *v.* McLean.

And, upon the trial in Superior Court, plaintiff, as witness for himself, in pertinent part, testified: "I don't complain about her conduct during our marriage, the reason was that I never wanted to marry her in the first place. As far as her conduct toward me, after the marriage, is concerned, I have nothing to complain of on that score except one thing. We never lived together and she wouldn't give me a divorce either, that is what we always argued about . . . As to whether I complain of anything she did, as far as I know, I know of nothing wrong that she has done . . ." Then to these questions by the court, plaintiff answered as shown: "Since you were married have you lived with your wife as man and wife? A. At the date of the marriage, yes, right after that, no. Yes, one day is what I mean . . . You say you stayed with her? A. The night we were married, and that is all. That was until two or three o'clock in the morning."

Again, plaintiff testified: "As to whether she never did agree to the idea we were to get married until the baby was born and then get a divorce, that was my understanding at the time we got married . . ." And again, "As to whether my wife, after our marriage, ever agreed for us to break up, well, we had never lived together. I don't see how she could agree to live apart. As to whether during our marriage she asked me to live with her, yes, continually she wanted me to come back to her." And again, plaintiff testified: "I just didn't want to live with the girl, that is all there is to it."

On the other hand, defendant testified in part: ". . . After we found I was going to have a child, we married. No, I did not agree, at the time I married him, that I would give him a divorce after the child was born. No sir, he did not ask me to do that. No, he did not say anything to me which would cause me to feel that he was not sincere in his affection toward me. The day we were married he told me that he was very happy and hoped I was too . . .," and so on.

The case was submitted to the jury on these issues which the jury answered as shown:

"1. Were the plaintiff and defendant married, as alleged in the complaint? Answer: Yes.

"2. Have the plaintiff and defendant lived separate and apart from each other for two years next preceding the institution of this action, as alleged in the complaint? Answer: Yes.

"3. Has the plaintiff been a resident of the State of North Carolina for a period of six months next preceding the institution of this action? Answer: Yes.

"4. Was the alleged separation between the plaintiff and the defendant caused by the fault of the plaintiff? Answer: No."

Upon the verdict rendered judgment was signed. Defendant appeals therefrom and assigns error.

McLean *v.* McLean.

*Young, Young & Gordon for plaintiff, appellee.*
*W. R. Dalton, Jr., for defendant, appellant.*

Winborne, J.  Defendant, as appellant, brings up for consideration twenty assignments of error.  It is necessary, however, to give express consideration to these:

Assignments of error numbers 1 and 2, based upon exceptions to the denial of defendant's motions aptly made for judgments as of nonsuit, are untenable.  The plaintiff having based his ground for divorce upon two years separation, G.S. 50-6, and defendant having averred by way of further defense and bar to this action, in substance, that whatever estrangement between the parties was occasioned by the plaintiff's own wrongful conduct and willful abandonment, the burden rests upon the defendant to establish the defense or defenses set up in the answer and relied upon by defendant.  See *Taylor v. Taylor*, 225 N.C. 80, 33 S.E. 2d 492, where the authorities are cited.  Hence motion for judgment as of nonsuit was properly overruled.  See *Wharton v. Ins. Co.*, 178 N.C. 135, 100 S.E. 266; *Hedgecock v. Ins. Co.*, 212 N.C. 638, 194 S.E. 86; *Mac-Clure v. Casualty Co.*, 229 N.C. 305, 49 S.E. 2d 742; *Barnes v. Trust Co.*, 229 N.C. 409, 50 S.E. 2d 2.

In the *Barnes case,* in opinion by *Barnhill, J.,* it is said: "A judgment of nonsuit is never permissible in favor of the party having the burden of proof upon evidence offered by him."

Moreover, there is no request for peremptory instruction.

However, assignments of error eight, eleven, twelve and thirteen, based upon exceptions of same numbers, taken to portions of the charge of the court to the jury are well taken.  These portions of the charge recognize the plea of plaintiff that his marriage to defendant was consummated under the agreement at the time, that they would get married and when the child was born they would then separate and get a divorce.  And these portions of the charge permitted the jury, in passing upon the fourth issue, to take into consideration evidence offered by plaintiff in this respect.  While it is noted that the record does not show that there was any motion to strike the allegation of the pleading, nor was there objection to the admission of the evidence, the plea and the evidence strike at the very foundation of the social life of the State, and are against public policy, of which the court of its own motion takes judicial notice.  Plaintiff may not in this manner exculpate himself from fault after the marriage.

While it is true the portions of the charge to which these assignments relate are in the form of contentions—to which objection does not appear to have been made at the time they were given, and ordinarily an error

McLEAN v. McLEAN.

in stating the contentions of a party should be called to the attention of the court in time to afford an opportunity of correction, otherwise it may be regarded as waived or as a harmless inadvertence, *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *S. v. Brown,* 227 N.C. 383, 42 S.E. 2d 402; *Williams v. Raines,* 234 N.C. 452, 67 S.E. 2d 343, it is the law in this State that the trial court should not at any time give an instruction which presents an erroneous view of the law, or an incorrect application of it. See *S. v. Hedgepeth,* 230 N.C. 33, 51 S.E. 2d 914; *S. v. Pillow,* 234 N.C. 146, 66 S.E. 2d 657.

In the Hedgepeth case, in opinion by *Barnhill, J.,* this Court declared: "It is the duty of the court to explain and apply the law to the evidence in the case and set the minds of the jury at rest in respect to the principles of law which should guide them in arriving at a verdict. And so it should not at any time give an instruction, even in the form of a contention, which presents an erroneous view of the law or an incorrect application thereof."

Moreover, if it be a fact that plaintiff has married under the mistaken impression that he had obtained a valid decree of divorce, the fact of such marriage may not inure to his benefit nor work to detriment of defendant in determining whether the alleged separation between plaintiff and defendant was caused by his fault.

And since there must be a new trial and other matters to which exception is taken may not then recur, other assignments of error are not considered.

Let there be a
New trial.

BARNHILL, J., concurring: Trial marriage is unknown to the law of North Carolina. Yet, in my opinion, if we approve the trial in the court below, we lend our stamp of approval to that type of marriage contract.

Of course, theologically, marriage is a sacrament, but under the law it is a contract. And here we are concerned with it only as a contract sanctioned by law and with the conditions under which the status thereby created may be dissolved. But even when considered as a contract sanctioned by law, marriage is the keystone of our civilization without which organized society could not long exist. Its maintenance and protection are fundamentals of our public policy. It is so basic that the contract of marriage is set apart and treated as one entirely different from other contracts. It is to continue in force and effect from its inception to its dissolution by death or for a cause and in the manner prescribed by law.

The law as it now exists in this State does not sanction any modification or limitation upon the obligations it imposes by a prenuptial agreement except in respect to the property of the contracting parties.

But here we have a trial in which the plaintiff is permitted to meet the defense of abandonment by proof of a prenuptial agreement that the obligations imposed by the marriage should not be binding on either party.

Plaintiff testified that he left the defendant; that he did not want to live with her; that he wanted to marry another woman; that defendant repeatedly asked him to live with her, but that he refused; that he knew of nothing wrong that she had done; and that he had no complaint about her conduct. Thus, his own testimony entitled defendant to a peremptory instruction on the fourth issue.

But no. There was a prenuptial agreement that the marriage should be nothing more than a farce and plaintiff may now justify what has heretofore been considered an abandonment by proving a prenuptial agreement to separate after marriage. Thus the prenuptial agreement modifies and takes precedence over the solemn contract of marriage. Certainly this was the theory of the trial in the court below.

In my opinion, proof of the prenuptial agreement to separate after marriage and abandon the obligations imposed by the marriage is so diametrically opposed to the fundamental policy of the State it became and was the duty of the court to exclude any and all evidence in respect thereto even without objection by defendant. Certainly it committed error when it submitted this testimony to the jury in its charge as evidence properly to be considered on the fourth issue.

Any person having knowledge of the facts disclosed by this record and the record on the former appeal, *McLean v. McLean,* 233 N.C. 139, would experience a sense of sincere sympathy for the second woman in the triangle. She is innocent of any wrongful conduct and is the victim of plaintiff's machinations.

He married defendant and, according to her testimony, maintained the status of marriage with her over a period of years. He then instituted an action for divorce against her (she being a resident of the State of Illinois) in Guilford County. But when she appeared to defend the action, he submitted to a voluntary nonsuit. He then, by practicing a fraud on the court (*McLean v. McLean, supra*), obtained a decree of divorce in Alamance County. Thereafter he married the second woman and is the father of her child. But the question here involved is so vital and so directly affects the public interest and fundamental public policy of the State that, in comparison, the rights or interest of the individual fade into insignificance. I vote for a new trial.

DEVIN, C. J., dissenting: Twice the court and jury have decided upon the evidence offered that the plaintiff was entitled to a divorce from the

defendant. After the first divorce decree was signed in 1947 the plaintiff remarried and lived as husband and wife with his second wife until February, 1951, when the first divorce decree was set aside by this Court. *McLean v. McLean*, 233 N.C. 139. On the second hearing in Alamance Superior Court, May, 1952, the defendant was present with counsel, and the issues were fought out before a jury. Both plaintiff and the defendant testified, and all the evidence pertinent to the issues, and particularly to the issue whether the separation was caused by the fault of the plaintiff, was submitted to the jury. Again the issues were answered in favor of the plaintiff and the Judge signed the decree of divorce. The plaintiff's evidence was sufficient to carry the case to the jury. There was no objection or exception to any of the evidence offered by the plaintiff.

The majority opinion, however, holds that the trial judge erred in his charge to the jury in stating as one of the plaintiff's contentions that there was an understanding between himself and the defendant at the time they were married in 1933 that they would get married and when the child was born they would separate and get a divorce. This evidence had been admitted without objection. There was no suggestion to the trial judge that the defendant considered or would argue that this evidence was incompetent or improper. It was offered to negative the charge embraced in the 4th issue that the separation was caused by the fault of the plaintiff. The defendant testified in contradiction about the same transaction. This was one of many matters related by plaintiff in his testimony tending to show that there had been a separation not later than 1944 and a living apart for the statutory period. In this case without objection opportunity was given both parties to testify about their relations so that the jury might have the complete picture. The plaintiff's suit was not based upon any antenuptial agreement nor was any contract right based thereon asserted. The separation alleged as the basis of the suit began long afterward. The principle enunciated in *Archbell v. Archbell,* 158 N.C. 408, has no application here. It was only after the defendant had lost her case that she raised the point of any impropriety in the plaintiff's evidence to which she had not theretofore objected.

Counsel for defendant frankly stated in his argument before this Court that he was basing his appeal largely on the question of nonsuit, and that he could hardly expect a jury to break up a subsisting marriage in the attempt to restore one that had long since gone on the rocks. The plaintiff and defendant have not lived together as husband and wife for many years, and there is no hope they ever will. The plaintiff is a Master Sergeant in the United States Army, and has been a resident of Greensboro since 1946. While his conduct in the manner in which he secured the first divorce was improper, after that divorce decree was signed, the second wife married him in good faith, and they lived together for more

than three years and until the first divorce decree was set aside. They are now separated by the law but doubtless hoping to renew their disrupted marriage relation.

I think the verdict and judgment below should not be disturbed.

ERVIN, J., concurs in dissent.