W. H. McKINNEY and Wife, LUCY H. McKINNEY, v. CITY OF
HIGH POINT.

(Filed 15 January, 1954.)

**1. Appeal and Error § 51a—**

Allegations to the effect that the aluminum paint used on defendant municipality's water storage tank reflected the rays of the sun and concentrated an excessive glare on plaintiffs' premises to such an extent as to materially lessen the value of the property, were held on a former appeal to state a cause of action as for a taking of the property *pro tanto* for a public use. The decision constitutes the law of the case and precludes nonsuit upon evidence supporting such allegations.

**2. Municipal Corporations § 46—**

A cause of action by a property owner to recover for depreciation of the value of his property resulting from the reflection of the rays of the sun by the aluminum paint on defendant's water storage tank does not arise until the tank is painted with aluminum paint, and this date must be used in determining whether plaintiff's claim was filed in apt time, if, indeed, the municipal charter provisions in regard thereto apply to such action.

**3. Municipal Corporations § 37: Eminent Domain § 8—**

A municipality is not bound by its own zoning ordinances, and therefore in an action by a landowner to recover compensation for the depreciation of his property resulting from the erection of a water storage tank in a residential zone, the existence of the ordinance has no bearing upon the question of damages and its admission in evidence is error, since the municipality has the right to erect the tank and compensation may be recovered only for a manner of use amounting to a taking.

**4. Same—Landowners in a residential area may not recover compensation based solely on construction of water storage tank within the area by the municipality.**

Zoning ordinances are enacted in the exercise of the police power granted a municipality and are subject to amendment or repeal at the will of its governing body, and therefore landowners within a residential zone can acquire no vested right therein and may not recover compensation for the depreciation of their property resulting from the erection by the municipality of a water storage tank in such zone in the exercise of a governmental function, and an instruction to the effect that such landowners are entitled to compensation for the impairment or destruction of their property right that the zone remain a residential area, and permitting the jury to consider as elements of damage the proximity of the tank to their premises, its height, etc., must be held for prejudicial error.

**5. Trial § 31b—**

An erroneous statement of the law, even though made in stating a contention of a party, must be held for reversible error when the court does not charge the jury as to the erroneous nature of the contention or give the jury the correct rule to be followed by them in arriving at their verdict.

APPEAL by defendant from *Godwin, Special J.,* May Term, 1953, GUILFORD—High Point Division. New trial.

Civil action to recover compensation for a partial taking of plaintiffs' property for a public purpose.

The cause was here on former appeal from an order overruling a demurrer to plaintiffs' complaint. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440. The facts alleged as the basis of plaintiffs' cause of action, in support of which they offered evidence in the trial below, are there stated. The testimony essential to a decision of the questions presented on this appeal may be summarized as follows:

Plaintiffs own two lots in High Point located at the southeast intersection of Salem Street and Bridges Street. They have a frontage of 123.5 feet on Salem Street and 148 feet on Bridges Street. There is a one-story residence consisting of seven rooms, hall, bathroom, and front and back porches located on these lots. The residence faces Salem Street. They also own two other lots to the rear of the residence property and located at the southwest corner of Bridges and Howard Streets with a frontage of 148 feet on Bridges and 111.75 feet on the southwest side of Howard Street. These lots are vacant. Thus plaintiffs' property extends from Salem to Howard Streets, a distance of 275 feet.

Defendant acquired certain lots in the middle of the block on the northeasterly side of Howard Street upon which to build a water tank to supplement its water works system. Shortly thereafter, after hearings participated in by plaintiffs and other owners of property located in that vicinity, the defendant, on 15 August 1950, let the contract for the construction of said water tank which is 184 feet high and has a capacity of one million gallons. The work was completed 19 September 1951.

The tank was constructed near the center of the property purchased by defendant, the nearest cement foundation block being 44 feet from the easterly line of Howard Street. The tank is not directly behind plaintiffs' residence property but is at an angle almost directly east thereof. The southeast—rear—corner of plaintiffs' residence is nearer the front cement foundation of the tank than any other part of the residence. The distance between these two points is 298 feet. The distance between the tank and the southeast corner of plaintiffs' vacant lots facing on the opposite side of Howard Street is 125 feet.

Both plaintiffs' property and property purchased by defendant are located in a Residence A Zone under defendant's zoning ordinance.

The allegations of the elements of the damages, including damages caused by the erection of a building of a commercial nature in a Residence A Zone, appear in the former opinion. The plaintiffs contend that the construction of the water tank in the Residence A Zone near their property has "cheapened" the value of property in that location, and that

the zoning of said section including their property "created in plaintiffs . . . a vested property right which the defendant has violated by its action of erecting a business enterprise in the district."

They further allege that the tank was painted with aluminum paint which reflects glaring rays of the sun, which at times, according to their testimony, shines upon their property and the rear side of their residence with such intensity as to materially depreciate the value of their property for residence purposes, to which it is limited by the local zoning ordinance.

The issues submitted to the jury and the answers thereto are as follows:

"1. Are the plaintiffs the owners of the land mentioned and described in the complaint, as therein alleged?

"Answer: Yes.

"2. Has the defendant taken a part of the plaintiffs' property for a public use, as alleged in the complaint?

"Answer: Yes.

"3. If so, what compensation are the plaintiffs entitled to recover of the defendant?

"Answer: $2,000.00.

"4. Did the plaintiffs in apt time file their notice of claim with the defendant, as alleged in the complaint?

"Answer: Yes."

The court below signed judgment on the verdict and defendant excepted and appealed.

*James B. Lovelace and Frazier & Frazier for plaintiff appellees.*

*Jones & Jones and Brooks, McLendon, Brim & Holderness for defendant appellant.*

BARNHILL, J. This cause is again before us in large measure because counsel and the trial court misconstrued and misinterpreted our former opinion, *McKinney v. High Point*, 237 N.C. 66, 74 S.E. 2d 440. When that opinion is considered contextually and correctly analyzed and construed, it appears that we, in effect, held that the complaint alleged only one act on the part of defendant which, if established by evidence, will support a finding that defendant has made a partial appropriation of plaintiffs' property for a public use without just compensation.

Plaintiffs offered some evidence tending to show that the aluminum-colored tank, by reflecting the rays of the sun, concentrates an excessive glare on their premises to such an extent as to materially "cheapen" its value. This evidence is supported by allegation. For this reason the motion to dismiss, in view of our former opinion, *McKinney v. High Point, supra,* is untenable.

There is respectable authority to the effect that anything less than an actual physical invasion and "taking" of property for a public use cannot constitute a taking within the meaning of the fundamental law which requires the payment of just compensation. However, we need not enter into a discussion of that question—raised in the briefs—for our former opinion is the law of this case in respect thereto. Instead, we come directly to the exceptive assignments of error. These will not be discussed *seriatim.* We will only discuss briefly some of the questions raised thereby.

Plaintiffs' claim was filed in apt time. Their cause of action arose, if at all, when the defendant painted the tank with aluminum paint, thereby allegedly concentrating reflected rays of the sun on their property. Theretofore they had suffered no injury for which compensation may be recovered. *Lyda v. Town of Marion, post,* p. 265, and cases cited. Indeed, there is serious doubt whether the charter provision relied on by the defendant is controlling here. It would seem to apply to tort claims only. But this we do not decide.

In paragraph 9 of the complaint plaintiffs allege the various acts and conduct of defendant which, in combination, they contend constitute a wrongful taking of their property. It is true this Court summarized these allegations (including those which do not state conditions as they now exist but express the fears of the plaintiffs as to what may occur in the future) and said: "These allegations allege a taking of plaintiffs' property for which compensation must be paid for any loss the plaintiffs may have suffered under the fundamental law of the State and Nation." However, we also said: "If a complaint is good in any respect or to any extent, it cannot be overthrown by a demurrer."

If the opinion had stopped there, little could be said about the theory of the trial in the court below. But that is not all. Speaking through *Parker, J.,* the Court then proceeded to "knock down the ten pins" one by one.

We there held that (1) under the law as it then existed the defendant was not bound by its own zoning ordinance, and therefore it had the right to construct its water tank in a Residence A Zone without incurring any liability for the consequential damages sustained by residents of the zone as a result of such nonconforming use; and (2) in building the tank the defendant was acting in its governmental capacity and exercising one of its discretionary governmental powers or functions.

We further held that the complaint fails to allege a nuisance or negligent operation, and that the allegation that the tank constitutes a constant hazard to plaintiffs' property from airplanes, windstorms, and the like are contingent and speculative, for which no damages may be assessed.

Thus we left the allegation "that it is painted a bright silver color so that the reflection of the rays of the sun upon it causes a continuous and

blinding glare" which materially depreciates the value of their property as the one allegation upon which plaintiffs must rest their claim.

The court admitted the zoning ordinances to be considered on the question of damages only. This must be held for error. In so far as the defendant's action in erecting the water tank in a Residence A Zone is concerned, the cause must be heard as if there was no ordinance. Since defendant was not bound by the ordinance, it can have no possible bearing on the question of damages. It did what it had a right to do, and any damages caused to surrounding property by reason of the erection and maintenance by the municipality of the tank in a Residence A Zone are consequential in nature for which no recovery may be had. *McKinney v. High Point, supra; Clinton v. Ross,* 226 N.C. 682, 40 S.E. 2d 593 (Operation of tobacco sales warehouse); *King v. Ward,* 207 N.C. 782, 178 S.E. 577 (Operation of cotton gin across street from plaintiffs' residence).

In the *King case* this Court approved the charge to the jury as follows:

"I charge you, gentlemen, that even if the building of the gin in that locality diminished the value of the plaintiff's . . . property, you could not consider that, because the defendant had a right to build it there, and if . . . the erection of any business building affected the property, residential property, near that; that, even if that were so, you could not consider that as an element of damage, that is the damage a man has to take who owns a residence, and as the gin was a business house next to him, that is the risk he takes in living in town . . . You must be very careful to eliminate . . . from any damage that you may give to the plaintiff any depreciation in the value of its property, brought about by the building of this gin on the street opposite him, because he had a right to build it there."

*Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827, cited and relied on by both parties, correctly construed, is no authority for plaintiffs on the facts in this case except as to the alleged excessive glare caused by the reflection of the rays of the sun. The key or decisive sentence in that opinion is this: "The alleged injury consists in the doing of a lawful act, but in such a manner as to amount to a partial taking of the property in question for a public use." Except as to the alleged excessive rays of the sun reflected by the tank there is no evidence, on this record, of a "manner of use" amounting to a taking.

In a number of instances the court, in its charge, gave the jury instructions as to the law in the form of contentions. As an example, it stated:

"The position taken by the plaintiffs in that respect is that they had a property right, a vested property right in the retention of that area or that district in which they had built their home; that they had a property right in its remaining a residential area, and that property right was a

vested right and that it was violated, impaired or destroyed by the erection of the water tank, and that they are entitled to compensation.

"They also allege and contend that they have been—that the use and enjoyment of that property has been impaired by the erection of that tank which constitutes a taking or an injury or a damaging of their property for which they contend they are entitled to be compensated."

These instructions, though in the form of contentions, must be held for reversible error. *S. v. Hedgepeth,* 230 N.C. 33, 51 S.E. 2d 914; *S. v. Pillow,* 234 N.C. 146, 66 S.E. 2d 657; *McLean v. McLean,* 237 N.C. 122, 74 S.E. 2d 320.

The vice of the quoted excerpt from the charge is twofold: (1) It placed before the jury matters that had been expressly rejected by this Court in its former opinion and which should not be taken into consideration by the jury in arriving at a verdict, *S. v. Pillow, supra,* and cases cited; and (2) it presented an erroneous concept of the law. The adoption of a zoning ordinance does not confer upon citizens living in a Residence A Zone, as therein defined, any vested right to have the ordinance remain forever in force, inviolate and unchanged.

A zoning ordinance is not a contract between the municipality and its citizens. *Realty Co. v. Cincinnati,* 21 N.E. 2d 993. The adoption of such ordinance is a valid exercise of the police power, *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897; *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78, which is not exhausted by its use.

It being a law enacted in the exercise of the police power granted the municipality, no one can acquire a vested right therein. *Turner v. New Bern,* 187 N.C. 541, 122 S.E. 469; *Pinkham v. Mercer,* 227 N.C. 72, 40 S.E. 2d 690; *Reichelderfer v. Quinn,* 287 U.S. 315, 77 L. Ed. 331; *Reinman v. Little Rock,* 237 U.S. 171, 59 L. Ed. 900. It is subject to amendment or repeal at the will of the governing agency which created it.

We might well overlook as harmless the erroneous statement of the law in the form of a contention if and when the judge forthwith instructs the jury as to the erroneous nature of the contention and gives them the correct rule to be followed by them in arriving at their verdict. But here this was not done either at the time the contention was stated or later in the charge.

There was error in the charge of the court on the issue of damages. The general import of the charge as to the law applicable to the facts in this case may be summarized by quotation of one excerpt of the charge on that issue as follows:

"The only question with which you will be concerned in your consideration of this issue is whether the City in erecting the tank took away from the plaintiffs something of value, be it large or small."

By this instruction· the court opened the door for the jury to consider the alleged deprivation of a vested right, the proximity to the premises of plaintiffs, the fact the tank is taller than other buildings in the vicinity and can be seen from plaintiffs' front yard and is a commercial structure erected in a residential section, as well as every other element of consequential damages plaintiffs insist they are entitled to recover. And the vice in the generality of the instruction is emphasized by the fact the court at no time instructed the jury as to what constitutes a taking or in what respect plaintiffs' evidence tends to prove a taking under the law as it exists in this jurisdiction.

Defendant at this time seeks only one new trial, and one prejudicial error is sufficient basis for awarding it. However, we have departed from our usual custom and discussed several errors in the trial, any one of which is sufficient to warrant a new trial. We have done so because these questions would, if not noticed by us, in all probability arise on a retrial and, we trust, our discussion will tend to promote a retrial of the issues in this cause free of substantial error.

We are indebted to counsel for full and comprehensive briefs in which many authorities bearing on the questions presented are cited. They have been of material aid to us. However, in view of our conclusions herein, we have refrained from citing many of the cases to which our attention has been directed.

For the reasons stated there must be a
New trial.