**BROWNING-FERRIS INDUSTRIES v. GUILFORD COUNTY BD. OF ADJ.**

[126 N.C. App. 168 (1997)]

BROWNING-FERRIS INDUSTRIES OF SOUTH ATLANTIC, INC., PETITIONER v. GUIL-FORD COUNTY BOARD OF ADJUSTMENT AND KAY CHEMICAL COMPANY, ENDURA PRODUCTS, INC., FOUNDATION SERVICES, INC., GBA SYSTEMS, GOLDEN STATE FOODS CORP., AND P.M. TUBE & SPECIALTY, INC., CHARLES AND CATHERINE MEARS, LOUISE J. RICE, MRS. CLINTON R. TUCKER AND LARRY E. TUCKER, RESPONDENTS

No. COA96-750

(Filed 7 May 1997)

### Zoning § 57 (NCI4th)— transfer station—amendment of zoning ordinance—substantial expenditures—no common law vested right

Plaintiff did not have a common law vested right to construct and operate a solid waste transfer station under defendant county's pre-amended zoning ordinance without acquiring a special use permit as required by an amendment to the ordinance, although plaintiff had incurred land purchase and site development expenses of $582,000 and had received conditional approval of its site development plan prior to the amendment, where plaintiff had not acquired a building permit prior to the amendment, and the record did not reveal that plaintiff was prejudiced or harmed by the special use permit requirement.

### Am Jur 2d, Zoning and Planning §§ 646-648.

Appeal by petitioner from order filed 16 April 1996 in Guilford County Superior Court by Judge Sanford L. Steelman, Jr. Heard in the Court of Appeals 26 February 1997.

*Petree Stockton, L.L.P., by Richard E. Glaze, Stephen R. Berlin, and Donald M. Nielsen, for petitioner-appellant.*

*Office of the Guilford County Attorney, by Jonathan V. Maxwell, and J. Edwin Pons; Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., William G. Ross, and John R. Archambault; and Patton Boggs, L.L.P., by James S. Schenck, IV, for respondent-appellees.*

GREENE, Judge.

Browning-Ferris Industries of South Atlantic, Inc. (BFI) appeals the Superior Court's 11 April 1996 order (order) affirming the Guilford County Board of Adjustment's (Board) decision that the 23

March 1995 amendment (amendment) to the Guilford County Development Ordinance (Ordinance) requiring special use permits for transfer stations[1] on property zoned Heavy Industrial (HI) applies to BFI's proposed solid waste transfer station.

On 13 June 1994 James D. Elza (Elza), Director of the Department, informed BFI that a tract of land containing approximately 9.66 acres of land (Little Santee tract) was zoned HI and that a transfer station "is a permitted use in the HI zone." Elza further informed BFI that the Little Santee tract was "also in a watershed and will need to meet the watershed requirements as well as driveway, parking, landscaping and other requirements of the [Ordinance]."

BFI applied to the North Carolina Department of Environment, Health and Natural Resources (DEHNR) in July of 1994 to obtain a transfer station permit. In August of 1994 BFI submitted to the Guilford County Planning and Development Department (Department) a site development plan as required by Section 3-11.2 of the Ordinance.[2] DEHNR issued the transfer station permit on 8 November 1994. The Guilford County Technical Review Committee (TRC) reviewed the site development plan and neither approved or rejected the plan. BFI resubmitted a revised set of site development plans on 21 November 1994. On 2 December 1994 BFI purchased the Little Santee tract. In February 1995 DEHNR revoked the transfer station permit because it had not fulfilled all the Ordinance's requirements.

On 21 February 1995 the Board determined that transfer stations were permitted by right in HI zones. On 14 March 1995 the TRC "conditionally approved" the site development plan "subject to" twelve conditions and BFI was further instructed to "[r]evise and resubmit all drawings for complete plan." On 22 March 1995 BFI resubmitted a revised plan. On 23 March 1995 the Guilford County Board of County Commissioners (County) adopted an amendment to the Ordinance (effective upon passage) providing that the construction and operation of a transfer station would require "a special use permit," a permit not required under the pre-amended Ordinance. On 18 May 1995 Elza (in a letter) informed BFI that the 22 March 1995 plan "did not

---

1. A transfer station is a facility where garbage collection vehicles empty the garbage they have collected locally. The garbage is then transferred into larger vehicles for transportation to a landfill.

2. The Ordinance requires that no "building permit shall be issued" until a site development plan has been approved. Ordinance, § 3-11.1 (B).

comply with the [O]rdinance requirements that it meet all approval conditions as listed by the [TRC] on March 14, 1995." Elza then stated (in the letter) that he could not "issue a final approval."

On 19 May 1995, the North Carolina Department of Justice ruled that because the transfer station permit "was issued without an appropriate zoning approval letter from Guilford County, the permit was void from the time of issuance." On 20 June 1995 the Board determined that Elza's decision was "improper" and found as fact that on 22 March 1995 BFI had fulfilled all conditions enumerated by TRC when it granted conditional approval on 14 March 1995. On 20 June 1995 the Board rejected BFI's claim that it had acquired a common law vested right to construct and operate a transfer station on the Little Santee tract without obtaining a special use permit. In support of its ruling the Board found that "[n]o valid permits had been approved for this project and . . . BFI has not demonstrated . . . that they have spent money following the issuance of a conditional approval of the [site development plan]." BFI appealed the Board's decision to the Superior Court which upheld the Board's decision in a 11 April 1996 order.

The record reveals that BFI had incurred expenses as of 23 March 1995 in the approximate amount of $582,000: $520,000 for land purchase and related fees, $49,000 for engineering consultation, $5,000 for design expense, and $8,000 for miscellaneous expenses.

The issue is whether BFI has a vested right to proceed with the construction and operation of a transfer station on the Little Santee tract under the pre-amended Ordinance.

BFI argues that the Board "misapplied the vested rights standard and erred as a matter of law." Accordingly, this Court's review of the Board's decision is *de novo. Ballas v. Town of Weaverville*, 121 N.C. App. 346, 349, 465 S.E.2d 324, 326 (1996).

In this case before BFI constructed the transfer station on the Little Santee tract or was issued a building permit authorizing such construction, the County amended the Ordinance to require the issuance of a special use permit prior to the construction and·operation of the transfer station. The special use permit was not a requirement of the pre-amended Ordinance. BFI argues that it is not required to obtain a·special use permit under the amended Ordinance because it has a vested right to proceed with the development of the transfer station pursuant to the pre-amended version of the Ordinance. The

basis of the argument is that it has expended $582,000 in the purchase and development of the transfer station site in good faith reliance on the pre-amended Ordinance, the 13 June 1994 letter from Elza, and the conditional approval of its site development plan.

As a general proposition "[t]he adoption of a zoning ordinance does not confer upon citizens . . . any vested rights to have the ordinance remain forever in force, inviolate and unchanged." *McKinney v. City of High Point*, 239 N.C. 232, 237, 79 S.E.2d 730, 734 (1954). North Carolina does, however, recognize two methods for a landowner to establish a vested right in a zoning ordinance: (1) qualify with relevant statutes: N.C.G.S. § 153A-344.1 (1991) (counties), N.C.G.S. § 160A-385.1 (1994) (cities and towns); or (2) qualify under the common law, *Town of Hillsborough v. Smith*, 276 N.C. 48, 54, 170 S.E.2d 904, 909 (1969); N.C.G.S. § 153A-344.1(f)(2); N.C.G.S. § 160A-385(f)(2). In this case, BFI argues that it is entitled to a vested right pursuant to the common law and we address only that issue.

The common law vested rights doctrine is "rooted in the 'due process of law' and the 'law of the land' clauses of the federal and state constitutions" and "has evolved as a constitutional limitation on the state's exercise of its police power[s]." *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 62, 344 S.E.2d 272, 279 (1986). A party's common law right to develop and/or construct vests when: (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations "substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building," *Town of Hillsborough v. Smith*, 276 N.C. at 55, 170 S.E.2d at 909; (2) the obligations and/or expenditures are incurred in good faith, *Id.*; (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party, *Id.* (requiring building permit); *In re Campsites Unlimited*, 287 N.C. 493, 501, 215 S.E.2d 73, 77 (1975) (permit not required for vesting if permit not required under law in effect at time of expenditures); *Mecklenburg County v. Westbery*, 32 N.C. App. 630, 635, 233 S.E.2d 658, 661 (1977) (a mistakenly-issued permit cannot give rise to a vested right); *Warner v. W & O, Inc.*, 263 N.C. 37, 41, 138 S.E.2d 782, 786 (1964) (expenditures made prior to issuance of permit "not made in reliance on the permit"); *see Avco Com. Developers v. South Coast Reg. Comm'n*, 553 P. 2d 546, 551 (1976) (preliminary governmental

approval not sufficient to support vested right); and (4) the amended ordinance is a detriment to the party. *See Russell v. Guilford County,* 100 N.C. App. 541, 545, 397 S.E.2d 335, 337 (1990); *see also* David W. Owens, *Legislative Zoning Decisions* (Institute of Government, 1993). The burden is on the landowner to prove each of the above four elements.

In those situations where multiple permits are required preliminary to the issuance of the building permit, and substantial obligations and/or expenditures are incurred in good faith reliance on the issuance of those permits, the party does acquire a vested right in those provision(s) of the ordinance or regulation pursuant to which the preliminary permit(s) was issued. *See Cardwell v. Smith,* 106 N.C. App. 187, 192, 415 S.E.2d 770, 774, *cert. denied,* 106 N.C. App 187, 419 S.E.2d 569 (1992) (landowner has vested right in ordinance provision under which special use permit had been issued).

In this case there is no evidence that BFI obtained a building permit and thus it is not entitled to a vested right to proceed with the construction and operation of the transfer station consistent with the pre-amended Ordinance. In so holding we reject the arguments of BFI that substantial expenditures in reliance on the pre-amended Ordinance, the 13 June 1994 letter from Elza or the conditional approval of the site development plan gives rise to a vested right to construct and operate a transfer station. BFI's claim of a vested right is also properly rejected for another reason. There is nothing in this record to show that BFI would be prejudiced or harmed if the amended Ordinance is held to apply to its efforts to construct and operate the transfer station. The mere requirement (in the amended Ordinance) that BFI acquire a special use permit prior to construction and operation of the transfer station is not itself supportive of an argument that BFI has been prejudiced by the amended Ordinance.

The trial court correctly affirmed the decision of the Board.

Affirmed.

Judges MARTIN, M., and McGEE concur.