JOHN B. WOODLIEF AND WIFE, CYNTHIA M. WOODLIEF, PLAINTIFFS v. MECKLENBURG COUNTY, A BODY POLITIC AND CORPORATE OF THE STATE OF NORTH CAROLINA, CITY OF CHARLOTTE, A MUNICIPAL CORPORATION OF THE STATE OF NORTH CAROLINA, CHARLOTTE ZONING BOARD OF ADJUSTMENT, INSITE ENGINEERING AND SURVEYING, PLLC, E.C. GRIFFITH COMPANY, DORSETT HITCHENS PROPERTIES, LLC, AND JOEL MADDEN, DEFENDANTS

No. COA05-564

(Filed 21 February 2006)

**1. Zoning— revision of application for floodlands development permit—considered under original ordinance**

The trial court did not err by granting summary judgment for defendants in a declaratory judgment action arising from an application to develop property next to that of plaintiffs in an

area that frequently flooded. Plaintiffs contended that the court erred by allowing defendants to revise their application under the ordinance in effect when the original application was filed (the 2000 ordinance), rather than a new ordinance (the 2003 ordinance). Both ordinances were silent about grandfathering, and the practice of the Planning Commission was to evaluate subdivision ordinances under the regulatory rules existing at the time of the application. Land development is a process that occurs over time, and a request for further information by a reviewing agency does not require that the process begin anew.

**2. Zoning— development within floodway—permit not improperly allowed**

Plaintiffs did not show that the Board of Adjustment acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law by concluding that defendant's street and utility development within a FEMA floodway did not constitute an impermissible encroachment. Summary judgment was correctly granted for defendants.

**3. Zoning— floodway development—application to proper entity**

Defendants applied to the proper entity to obtain a development permit in an area subject to flooding when it applied to the Floodplain Administrator for Storm Water rather than directly to the Board of Adjustment. The Board of Adjustment did in fact conclude that the development was in accord with the applicable ordinance and approved the issuance of the permit.

Judge HUDSON concurring in the result.

Appeal by plaintiffs from order entered 5 May 2004 by Judge James W. Morgan and order entered 17 December 2004 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 December 2005.

*Smith Moore LLC, by Thomas E. Terrell, Jr. and Laurie D. Clark, for plaintiffs-appellants.*

*Charlotte City Attorney, by Senior Assistant City Attorney Robert E. Hagemann, for petitioner-appellees Mecklenburg County, City of Charlotte and Charlotte Zoning Board of Adjustment.*

WOODLIEF v. MECKLENBURG CTY.

[176 N.C. App. 205 (2006)]

*Shumaker, Loop & Kendrick, LLP, by William H. Sturges, for petitioners-appellees Insite Engineering and Surveying, PLLC, E.C. Griffith Company, Dorsett Hitchens Properties, LLC, and Joel Madden.*

TYSON, Judge.

John B. Woodlief and Cynthia M. Woodlief ("plaintiffs") appeal from the trial court's 17 December 2004 order granting summary judgment in favor of Mecklenburg County, the City of Charlotte, the Charlotte Zoning Board of Adjustment, Insite Engineering and Surveying, PLLC, E.C. Griffith Company, Dorsett Hitchens Properties, LLC, and Joel Madden (collectively, "defendants"). We affirm.

## I. Background

Plaintiffs are the owners of a parcel of land used for residential purposes located in Charlotte. Defendant, E.C. Griffith Company ("Griffith"), owns approximately 6.4 acres of undeveloped woodland property abutting plaintiff's parcel. Both properties adjoin the Briar Creek floodway, an area regulated by the federal and local governments to control flooding. This area has experienced significant flooding in past years.

The Federal Emergency Management Agency ("FEMA") regulates uses of land that are subject to flooding. FEMA requires states and local communities to adopt standards equal to or more restrictive than the federal criteria in order to qualify for federal disaster relief and insurance.

Prior to 2000, the City of Charlotte regulated the 1.0 foot surcharge FEMA floodway, as required by FEMA's flood insurance program. In the late 1990s, the City of Charlotte and Mecklenburg County began to develop and adopt more restrictive flood protection regulations. On 28 February 2000, the Charlotte City Council established a more restrictive floodway using a 0.5 foot surcharge instead of the 1.0 foot FEMA surcharge to locate the floodway encroachment line. The City Council also established a 0.1 foot surcharge local floodway known as the FLUM (Floodplain Land Use Map) floodway. The FLUM floodway further limits uses and development than what is permitted within the FEMA floodway.

Griffith and defendant, Dorsett Hitchens Properties, LLC. ("Dorsett"), decided to jointly develop the 6.4 acre parcel into a resi-

dential subdivision. Griffith and Dorsett employed defendant, Insite Engineering and Surveying, PLLC ("Insite"), to apply for a floodlands development permit. Insite's employee, defendant Joel Madden ("Madden"), filed an application for a permit with the Mecklenburg County Storm Water Services Department ("Storm Water") on Griffith's and Dorsett's behalf on 3 March 2003. Storm Water issued Permit Number 917 on 27 March 2003.

In May 2004, Storm Water determined it had mistakenly issued the permit. The Charlotte City Council adopted new floodway regulations on 12 May 2003, after Permit Number 917 was issued. Storm Water sent Griffith and Madden a letter stating Permit Number 917 had been "revoked." The letter also advised the applicant could revise its application to comply with the 2000 ordinance in effect at the time the original application was filed.

Griffith, through Insite, submitted a revised flood study in June 2004. Storm Water found the revised flood study complied with the City of Charlotte's floodplain regulations in effect at the time of the application. Storm Water "reissued" Permit Number 917. This permitting decision was affirmed and adopted by the Charlotte Zoning Board of Adjustment on 4 November 2003.

Plaintiffs filed a complaint for declaratory judgment in Mecklenburg County Superior Court challenging the validity of Permit Number 917. On 5 May 2004, the trial court granted defendant's motion for partial judgment on the pleadings. On 17 December 2004, the trial court granted summary judgment in favor of defendants. Plaintiff appeals.

## II. Issues

Plaintiffs contend the trial court erred in granting summary judgment for defendants and argue: (1) the flood permit was issued under a repealed ordinance; (2) the flood permit was issued in violation of the 2000 ordinance; and (3) the flood permit was issued by an entity that lacked the legal authority to issue it. Plaintiffs also assigned error to the trial court's 5 May 2004 order. Plaintiffs failed to argue their assignment of error to the order entered 5 May 2004 on appeal. N.C.R. App. P. 28(b)(6) (2005) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). This assignment of error is dismissed.

**WOODLIEF v. MECKLENBURG CTY.**

[176 N.C. App. 205 (2006)]

### III. Standard of Review

#### A. Summary Judgment

In a motion for summary judgment, the movant has the burden of establishing that there are no genuine issues of material fact. The movant can meet the burden by either: "1) Proving that an essential element of the opposing party's claim is nonexistent; or 2) Showing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor [evidence] sufficient to surmount an affirmative defense to his claim." *Price v. Davis*, 132 N.C. App. 556, 559, 512 S.E.2d 783, 786 (1999) (citing *Messick v. Catawba County*, 110 N.C. App. 707, 712, 431 S.E.2d 489, 492-93, *disc. rev. denied*, 334 N.C. 621, 435 S.E.2d 336 (1993)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003).

*Hines v. Yates*, 171 N.C. App. 150, 157, 614 S.E.2d 385, 389 (2005).

#### B. Statutory Construction

We review an issue of statutory construction *de novo*. *A&F Trademark, Inc. v. Tolson*, 167 N.C. App. 150, 153-54, 605 S.E.2d 187, 190 (2004). The primary goal of statutory construction is to effectuate the legislature's purpose and intention. *MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973). " 'The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances.' " *Id.* (quoting *Cogdell v. Taylor*, 264 N.C. 424, 142 S.E.2d 36 (1965)).

When reviewing a board of adjustment's interpretation of an ordinance, " 'our task on appeal is not to decide whether another interpretation of the ordinance might reasonably have been reached by the board,' but to decide if the board 'acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law' in interpreting the ordinance." *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999) (quoting *Taylor Home v. City of Charlotte*, 116 N.C. App. 188, 193, 447 S.E.2d 438, 442, *disc. rev. denied*, 338 N.C. 524, 453 S.E.2d 170 (1994)).

## IV.  Issuance of the Flood Permit

### A.  Evaluation Under the 2000 Ordinance

[1] Plaintiffs argue the trial court erred in granting summary judgment to defendants because Storm Water evaluated the June 2004 revised flood study under the 2000 floodplain ordinance instead of the 2003 ordinance. We disagree.

The original application was submitted on 3 March 2003 when the 2000 ordinance controlled the conditions of the permit. The City amended the flood way regulations in May 2003. Insight's revised flood study was submitted in June 2004. The 2003 ordinance is silent on allowing filed flood lands development permit applications to be evaluated under standards in effect when filed. Plaintiffs argue the trial court erred in applying a "grandfather provision" when the 2003 ordinance contains no such provision.

The letter from Storm Water to Griffith and Madden stated:

If you wish to submit a *revised model* or models still showing the fill within the FEMA floodway line or *a revised application* with different fill parameters and revised models for our review using the ordinance that was in effect at the time of your original submittal (March 3, 2003), please do so no later than July 12, 2004. Failure to submit by that date will result in *your original application* being deemed to have been abandoned.

(Emphasis supplied). An inter-office memorandum within the Planning Commission stated:

We have been informed that Mecklenburg County Storm Water Services has revoked the Floodlands Development Permit necessary for the development of Eastover Woods after determining that it was mistakenly issued. However, Mecklenburg County Storm Water Services has given the developer until July 12, 2004 to *re-submit information in support of their original Floodland Development Permit application.*

(Emphasis supplied).

Storm Water considered the following factors in determining whether the revised flood study would be evaluated under the 2000 ordinance: (1) both the 2000 and 2003 ordinances are silent on the issue of evaluating permit applications submitted and filed prior to the adoption of the 2003 ordinance; and (2) the · Charlotte

Mecklenburg Planning Commission had a prior pattern and practice of evaluating subdivision applications under the regulatory rules existing at the time of the application for preliminary subdivision approval, where the subsequently adopted regulations are silent on the issue of grandfathering.

In *Northwestern Financial Group v. County of Gaston,* our Supreme Court addressed an explicit grandfathering provision. 329 N.C. 180, 405 S.E.2d 138 (1991). Gaston County adopted a mobile home park ordinance on 1 July 1986. *Id.* at 182, 405 S.E.2d at 139. Gaston County amended the ordinance in September 1987. *Id.* The amended ordinance contained the following language: "[t]he provisions of the Gaston County Mobile Home Park Ordinance Dated July 1, 1986, shall apply to those . . . plans . . . submitted to the Gaston County Division of Planning after July 1, 1986 and prior to the effective date of this ordinance." *Id.* The plaintiff submitted a plan for a mobile home park in June 1987 prior to the effective date of the ordinance's amendment. *Id.* The plaintiff submitted a revised plan shortly before the ordinance was amended. *Id.* at 183, 405 S.E.2d at 140. In response to requests from Gaston County, the plaintiff further revised and resubmitted the plans three times after the 1987 ordinance became effective. Gaston County refused to accept the fifth set of revised plans under the 1986 ordinance. 329 N.C. at 185, 405 S.E.2d at 141.

In *Northwestern Financial Group,* our Supreme Court determined whether the plaintiff waived its right to have the plan reviewed under the 1986 ordinance by either an affirmative act or a failure to act. *Id.* at 188, 405 S.E.2d at 143. The Court stated:

The Court of Appeals held that the revised plans submitted after the enactment of the new ordinance did not "relate back" to plans submitted prior to the enactment of that ordinance. We do not agree. We conceive *the issue* to be not so much whether the plans relate back, as it *is whether the submission of the subsequent revised plans in response to the requirements or recommendations of regulatory bodies resulted in a waiver or abandonment of Northwestern's right to review under the 1986 ordinance. The more pertinent inquiry as to whether such right is waived or abandoned is through examination of the question of whether the subsequent plans were made in a good faith effort to bring its application into compliance* with the 1986 ordinance. We hold, based on the findings by the trial court, which are amply supported by the evidence, that Northwestern *submitted*

*the revised plans in response to the modifications recommended by a regulatory agency, proceeded in good faith to comply with the requirements of the 1986 ordinance,* and did not waive or abandon its right to review under that ordinance. *The revised plans were essentially a part of the normal give and take between the applicant and the regulatory authorities.*

*Id.* at 188-89, 405 S.E.2d at 143 (emphasis supplied). "Good faith efforts to comply with the recommendations of the reviewing agencies should not prejudice the applicant." *Id.* at 190, 405 S.E.2d at 144.

Here, the Griffith application was submitted and filed when the 2000 ordinance controlled the development. Griffith submitted additional information in connection with the original application after the ordinance was amended. Storm Water considered the revised flood study to be part of the original application process and not a new and separate permit application. The submission of the revised flood study was "part of the normal give and take between the applicant and the regulatory authorities." *Id.* at 189, 405 S.E.2d at 143. In submitting the revised flood study, Griffith was making a "good faith [effort] to comply with requirements of the . . . ordinance" in effect at the time the application was filed. *Id.* at 190, 405 S.E.2d at 144. Defendants "[were] entitled to rely upon the language of the ordinance in effect at the time [Griffith] applied for the permit." *Lambeth v. Town of Kure Beach,* 157 N.C. App. 349, 351, 578 S.E.2d 688, 690 (2003) (citing *Northwestern Financial Group,* 329 N.C. 180, 405 S.E.2d 138).

Land development is somewhat analogous to litigation. Neither is a snapshot, a freeze in time, but rather a process that occurs over time, sometimes months and years. Once a claimant timely files a lawsuit, the claimant tolls the statute of limitations for those claims. The claimant may amend his pleadings, dismiss without prejudice and refile, or add parties or claims to the original action. N.C. Gen. Stat. § 1A-1, Rule 15(a) (2003); N.C. Gen. Stat. § 1A-1, Rule 41(a) (2003); N.C. Gen. Stat. § 1A-1, Rule 14(a) (2003); N.C. Gen. Stat. § 1A-1, Rule 18(a) (2003). Both land development and litigation hold the potential for multiple sequences and paths. The outcome depends upon numerous dependent and independent, but correlated, variables. The design and construction of a project is specifically tailored to comply with the regulations in effect at the time of application for permits. A request for further information or clarification of an existing application by a reviewing agency or board does not

require the entire application and permitting process to begin anew. To hold otherwise would allow compliance with regulations and permitting to become a moving target to ever changing revisions or amendments.

Although our review is *de novo*, we give deference to the agency's interpretation of the ordinance in issue. *County of Durham v. N.C. Dept. of Env't and Natural Resources*, 131 N.C. App. 395, 396-97, 507 S.E.2d 310, 311 (1998) ("[E]ven when reviewing a case *de novo*, courts recognize the long-standing tradition of according deference to the agency's interpretation." The agency's past pattern and practice in similar applications also supports upholding the agency's decision in the absence of other controlling authority. This assignment of error is overruled.

### B. Issuance in Accordance with the 2000 Ordinance

[2] Plaintiffs contend the trial court erred in granting summary judgment in favor of defendants because Permit Number 917 was issued in violation of Section 9-21(4)(a) of the 2000 ordinance. We disagree.

The 2000 ordinance restricts development within both the FEMA and FLUM floodways. Section 9-21(4)(a) of the 2000 ordinance addresses the FEMA floodway and provides:

> With the exception of stream crossings which shall not raise the base flood elevation more than one foot, no encroachments, including fill, new construction, substantial improvements and other developments shall be permitted within the FEMA floodway, unless it has been demonstrated through hydrologic and hydraulic analysis performed in accordance with standard engineering practice that such encroachment would not result in any increase in flood level during occurrence of a FLUM base flood discharge, changes in FEMA floodway elevations, or FEMA floodway width.

(Emphasis supplied).

The revised floodplain study shows development occurring inside the FEMA floodway. The proposed subdivision plan shows construction of a cul-de-sac, driveway connections to the road, utility installations, and land clearing activities located within the FEMA floodway. Plaintiffs assert Griffith failed to demonstrate the encroachment will cause no rise in the flood level to occur during a FLUM base flood discharge as required by Section 9-21(4)(a).

The term "encroachment" is not defined in the 2000 ordinance. Section 9-21(4)(c) provides:

The *following uses shall be permitted by right within the flood-way district* to the extent that they are otherwise permitted by the zoning ordinance, and provided they do not employ structures, fill or storage of materials or equipment except as provided herein:

. . . .

2. Loading areas, parking areas, rotary aircraft ports and other similar uses, provided they are no closer than twenty-five (25) feet to the stream bank;

. . . .

5. *Streets*, bridges, overhead utility lines, creek and storm drainage facilities . . . and other *similar public community or utility uses*[.]

(Emphasis supplied).

The Board of Adjustment concluded the revised flood study "did not propose any encroachment or activity that would trigger the application of Former Regulations Sec. 9-21(4)a." The Board also concluded the proposed activities that will occur in conjunction with the development "are not encroachments under Sec. 9-21(4)a and are uses permitted by right pursuant to Sec. 9-21(4)c of the Former Regulations." Plaintiffs have failed to show the Board of Adjustment " 'acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law' " by concluding the street and utility development within the FEMA floodway is "permitted by right", does not constitute an impermissible encroachment, and is exempt. *Whiteco Outdoor Adver.*, 132 N.C. App. at 470, 512 S.E.2d at 74. This assignment of error is overruled.

### C. Authority of Storm Water

[3] Plaintiffs argue Griffith did not apply to the proper entity for purposes of obtaining the permit. We disagree.

Permit Number 917 was sought and obtained from the Floodplain Administrator for Storm Water. Section 9-19(a) of the 2000 ordinance, entitled, "Variance Procedures," states, "The zoning board of adjustment . . . shall hear and decide . . . any proposed encroachment

**WOODLIEF v. MECKLENBURG CTY.**

[176 N.C. App. 205 (2006)]

requests that would result in an increase in the floodway elevations or floodway widths during the occurrence of a base flood."

Plaintiffs assert Griffith should have applied directly to the Board of Adjustment because it sought permission to place encroachments in restricted areas and evidence shows the encroachments would raise the base flood elevation. The Zoning Board of Adjustment concluded the proposed development was in accordance with the 2000 ordinance and the proposed construction in the floodway was exempt from the ordinance. The ordinance expressly provides for exemptions for development such as utilities, public roads, and parking areas in the restricted areas.

The Zoning Board of Adjustment also expressly stated in its decision: "To the extent . . . that approval of the Charlotte Zoning Board of Adjustment is necessary, this decision on appeal shall constitute such approval and issuance of permit #917." This assignment of error is overruled.

### V. Conclusion

The trial court did not err in granting summary judgment in favor of defendants. No error of law was committed by the superior court in ruling the proposed development inside the FEMA floodway did not constitute an impermissible encroachment under Section 9-21(4)(a) of the 2000 City of Charlotte Floodway Regulations and defendant's development is "permitted by right" under Section 9-21(4)(c) of the City of Charlotte Floodway Regulations. The trial court's order is affirmed.

Affirmed.

Judge LEVINSON concurs.

Judge HUDSON concurs in result with a separate opinion.

HUDSON, Judge, concurring in result.

While I concur in the result reached by the majority, I believe that its discussion of grandfathering provisions, particularly the analogy to litigation, is misplaced. The primary case cited by the majority, *Northwestern Fin. Group, Inc. v. County of Gaston,* concerns a change to an ordinance which explicitly provided that the old version applied to plans submitted before the effective date of the change.

329 N.C. 180, 405 S.E.2d 138 (1991). The Court in *Northwestern* notes that the Board found that this explicit provision applied, then focuses on whether Northwestern had waived its application. *Id.* at 188, 405 S.E.2d at 143. The language quoted in the majority opinion immediately follows this statement:

> Having decided that Northwestern is entitled to have its application reviewed under the 1986 ordinance, we must next determine whether Northwestern waived that right by affirmative acts, that is, by abandonment of the first plans through the submission of the other revised plans, or by a failure to act, that is, the passage of time.

*Id.* Thus, the language discussed by the majority is focused on waiver by affirmative acts, which is not the issue before this Court. In addition, neither party cites a case in which our Courts have approved grandfathering in the absence of an explicit authorization, nor have we found one. I do not believe that creating a process of implicit grandfathering is appropriate here.

The law regarding vesting of a right to proceed under the prior version of an amended ordinance is well-established:

> A party's common law right to develop and/or construct vests when: (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building; (2) the obligations and/or expenditures are incurred in good faith; (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party; and (4) the amended ordinance is a detriment to the party. The burden is on the landowner to prove each of the above four elements.

*Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171-72, 484 S.E.2d 411, 414 (1997) (internal quotation marks and citations omitted).

Here, plaintiffs made expenditures in reliance on the original permit and the May 2003 letter from Storm Water, and thus acted in good faith, satisfying the third of the *Browning-Ferris Industries* elements. The amended ordinance tightened the floodplain development restrictions to the detriment of plaintiffs, thus satisfying the fourth.

However, "[p]ermits unlawfully or mistakenly issued do not create a vested right." *Clark Stone Co. v. N.C. Dep't of Env't & Natural Res.*, 164 N.C. App. 24, 40, 594 S.E.2d 832, 842, *disc. appeal dismissed*, 358 N.C. 731, 603 S.E.2d 878 (2004). Accordingly, defendants cannot prevail under a theory of vested rights.

Nevertheless, Storm Water first issued a permit to plaintiffs on 27 March 2003. In May 2003, Storm Water determined they had issued the permit in error, and sent plaintiffs a letter revoking the permit, but advising that the application could be revised and resubmitted under the 2000 ordinance. Storm Water did not notify defendants about the error issuing the original permit until early May; the amendment was adopted 12 May 2003. Because Storm Water erred in issuing the original permit and did not catch its mistake in time for defendants to make the necessary revisions, Storm Water treated this process as a revision and reissue, rather than as a new submission. Given our deference to an agency's interpretation of its own ordinance, I conclude that this process was proper, and would affirm on that basis.