WILLIAM H. "BILL" WILSON PETITIONER v. CITY OF MEBANE BOARD OF ADJUST-
MENT, THE CROWN COMPANIES, LLC, INTERVENOR, RESPONDENTS

No. COA10-971

(Filed 17 May 2011)

## 1. Zoning— prior ordinance—common law vested right

Expenditures on a real estate development project prior to
the enactment of a Unified Development Ordinance were not
made in reasonable reliance on and after the issuance of a build-
ing permit. Respondent Crown did not acquire a common law
vested right to have its development plan evaluated under the
prior ordinances.

## 2. Appeal and Error— mootness—zoning

An appeal from a zoning decision was not moot even though
amendments to a zoning ordinance before the appeal was filed
would have entitled respondent Crown to a building permit for its
development. A permit issued under the prior ordinance was void
*ab initio* and the amendments would not have eradicated the
effects of the violation.

Appeal by Petitioner from Judgment entered 18 May 2010 by
Judge Ronald Stephens in Alamance County Superior Court. Heard in
the Court of Appeals 26 January 2011.

*Andrew J. Petesch, Attorney for Petitioner-Appellant.*

*Bateman Law Firm, by Charles Bateman, Attorney for
Respondent-Appellee City of Mebane Board of Adjustment.*

*Wishart Norris Henninger & Pittman, P.A., by June K. Allison,
Attorney for Intervenor-Respondent-Appellee The Crown
Companies, LLC.*

HUNTER, JR., Robert N., Judge.

Petitioner appeals the trial court's Judgment affirming the deci-
sion of the City of Mebane Board of Adjustment ("the Board"), which
approved the issuance of a building permit by the City of Mebane to
The Crown Companies, LLC ("Crown"). Petitioner alleges the trial
court erred as a matter of law in affirming the Board's decision, which
found that Crown had acquired a common law vested right to proceed

with the development under zoning ordinances that are no longer in effect. Petitioner further alleges the trial court's decision was arbitrary and capricious, as it was not supported by substantial evidence. We do not reach all issues raised by Petitioner, because we agree with his contention that Crown did not acquire a common law vested right and therefore reverse the trial court's Judgment.

## I. Factual & Procedural History

This dispute arises out of the approval of a commercial development for a Walgreens retail store adjacent to a residential neighborhood in the city of Mebane, North Carolina (the "Walgreens Project"). Petitioner Bill Wilson ("Wilson") is the owner of a residential property located at 815 S. Fifth Street in Mebane. At this address, Wilson owns a lot that is zoned for residential use, upon which sits a 1950's four-bedroom house. Wilson purchased the property in 2005 and, that same year, sought to have it rezoned for commercial use. The City of Mebane denied his request.

In late 2006, Crown, a commercial real estate development company, became interested in developing the area of land adjacent to Wilson's property. Crown sought to build a Walgreens retail store on the site.

The Crown property is approximately 1.62 acres and is comprised of three parcels. At the time Crown purchased the property, two of the three parcels were zoned for business use, while the eastern–most parcel—the parcel adjacent to Wilson's property—was zoned for residential use.

Since 2002, the City of Mebane ("the City") had two separate zoning and landscaping ordinances in effect that applied to both the Crown and Wilson properties: the Landscape Standards Ordinance ("LSO") and the Mebane Zoning Ordinance ("MZO"). The LSO required a vegetation buffer to be placed between incompatible land uses. Specifically, section 3(f) of the LSO called for a 50-foot buffer between commercial and residential uses. The City adopted an amendment to the LSO in 2003 that exempted developments of less than five (5) acres of land from the 50-foot buffer requirement (the "five-acre exemption").

As Crown began its planning for the Walgreens Project, Daniel Barnes ("Barnes"), an engineer for and principle of Crown, had a series of conversations with the City of Mebane Planning Administration. In December of 2006, Barnes met with Montrina Hadley ("Hadley"), the Mebane Planning Director, and presented

Crown's initial plan for the Walgreens Project. From this first meeting with Hadley, it was apparent to Barnes that Crown's plan for the Walgreens site was in conflict with the zoning ordinances in effect at that time, the LSO and the MZO. Specifically, Barnes knew it would be difficult to accommodate the 50-foot buffer on the perimeter of the Walgreens site for the benefit of adjacent residential lots. Additionally, the site plan required that thirty percent (30%) of the building that would house the Walgreens store would sit on the eastern-most parcel, which was zoned for residential use and borders Wilson's property. Barnes was reassured, however, that because Crown's property was approximately 1.62 acres, certain zoning requirements, including the 50-foot buffer, could be waived pursuant to the five-acre exemption provided in the LSO.

After this initial meeting, Crown continued to pursue the development of the Walgreens Project and considered purchasing Wilson's property in order to accommodate a 50-foot buffer. In April 2007, Wilson · and Crown entered into a purchase agreement whereby Crown acquired the right to purchase Wilson's property.

In May 2007, however, Barnes concluded that purchasing Wilson's property was prohibitively expensive. Barnes submitted a revised site plan to Hadley reflecting Crown's decision not to acquire Wilson's land and requested Hadley's opinion as to the possibility of acquiring a waiver for the 50-foot buffer. Barnes also inquired as to whether Crown should seek rezoning of the residential-zoned parcel adjacent to Wilson's property, and upon which thirty percent of the Walgreens building would sit. Hadley replied that she discussed the issue with her staff; she recommended that Crown apply to have the residential parcel rezoned and indicated that a waiver for the 50-foot buffer would be granted.

In December 2007, Crown informed Wilson that it would not exercise its option to purchase his property. Crown, however, continued with its development efforts. During the next year, Barnes submitted four versions of the site plan to Hadley's office for approval on 23 January 2008, 19 May 2008, 23 June 2008, and 17 November 2008.

At the same time Crown was moving forward with its development plan, the City of Mebane adopted a new set of zoning ordinances, the Unified Development Ordinance ("UDO"). The UDO was adopted on 4 February 2008 and is a consolidation of the then-existing ordinances, the LSO and the MZO. While the majority of the LSO survived the consolidation into the UDO, the LSO's five-acre exemp-

tion for the 50-foot buffer between incompatible land uses was not incorporated into the UDO. Additionally, UDO section 1-2(A) states that any portion of a City ordinance that relates to land use and is inconsistent with the UDO is repealed.

When the UDO was adopted, Crown had not yet received approval on its site plan nor received a building permit. Three days after the adoption of the UDO, on 7 February 2008, the City's Planning Department Technical Review Committee ("TRC") met to review Crown's January 2008 site plan. The notes from this meeting indicate the plan had not been approved. The TRC met again on 4 June 2008 to review Crown's second revised plan. The notes from this meeting also indicate Crown's plans had not been approved. On 30 January 2009, Hadley stated in an email to Wilson's attorney that the site plan and building plans were still in review status and that no approvals or permits had been issued. Additional TRC meetings were held, and the record shows that Crown did not receive approval of its plans and a building permit until 24 February 2009.

On 3 March 2009, Wilson appealed the issuance of the Crown building permit to the Board. Wilson alleged the ordinance that controls the Crown development project is the UDO, adopted more than one year before the building permit was issued. Wilson alleged the buffer specified on the Crown site plan and approved by the Planning Administration was in violation of the UDO buffer requirements. Alternatively, he argued, if Crown's site plan was controlled by the LSO, the plan is in violation of the LSO, as the approved buffer does not "preserve the spirit of the Ordinance," as required by section 2(d) of the LSO.

The Board conducted a hearing on the matter on 4 May 2009 and issued its decision the same day. The Board denied Wilson's appeal, concluding that Crown had acquired a common law vested right to proceed with the development project pursuant to the requirements of the LSO and the MZO, which were in effect before the adoption of the UDO. On 4 June 2009, Wilson petitioned the Alamance County Superior Court for a writ of certiorari to review the Board's decision pursuant to N.C. Gen. Stat. § 160A-388 and UDO §§ 8-13 and 11-7; the writ of certiorari was issued on 22 July 2009. Crown filed a motion to intervene, which was granted on 4 August 2009.

After a hearing on the merits, the Superior Court upheld the Board's decision in its Judgment issued 18 May 2010. The trial court's findings of fact included, *inter alia*:

7. The review process for the Proposed Walgreens began in the first week of December 2006. . . . The first submittal [of the site plan] was made January 23, 2008, the second submittal was made May 19, 2008 and the fourth submitted on November 17, 2008. The final site plan was approved, the building permit application approved and fees paid on February 23, 2009. . . .

8. At all times during the review of the Proposed Walgreens, the City of Mebane applied the LSO to the project having taken the position that Crown had a vested right to proceed under the LSO rather than the UDO which was enacted on February 4, 2008.

9. Crown Development made substantial expenditures in good faith and in reliance upon valid governmental approvals and action.

Based upon its findings, the trial court concluded, as a matter of law, the Board's decision was supported by substantial evidence and it committed no error of law in determining Crown acquired a common law vested right to proceed under the LSO and was entitled to a building permit. From this Judgment, Wilson appeals.

## II. Jurisdiction and Standard of Review

Jurisdiction in this Court is proper pursuant to N.C. Gen. Stat. § 7A-27(b) (2009) (stating a right of appeal lies with this Court from the final judgment of a superior court "entered upon review of a decision of an administrative agency"). We review the trial court's decision for errors of law *de novo. Hilliard v. N.C. Dep't of Corrections*, 173 N.C. App. 594, 596, 620 S.E.2d 14, 17 (2005).

## III. Analysis

### A. Common Law Vested Right

[1] In his first argument on appeal, Wilson alleges the trial court erred, as a matter of law, in finding that Crown acquired a common law vested right to proceed with the Walgreens Project under the LSO and the MZO. We agree.

As we stated in *Browning-Ferris Indus. of S. Atl., Inc. v. Guilford County Bd. of Adjustment*, generally " '[t]he adoption of a zoning ordinance does not confer upon citizens . . . any vested rights to have the ordinance remain forever in force, inviolate and unchanged.' " 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997) (quoting *McKinney v. City of High Point*, 239 N.C. 232, 237, 79 S.E.2d 730, 734 (1954)). North Carolina law recognizes two methods by which a landowner may, however, obtain the legal right to continue a land

development project contrary to an ordinance that is currently in effect; such rights may vest in a landowner by common law or by statute. *Id.*

In the present case, Respondents do not argue that Crown acquired the right to proceed with the Walgreens Project under the LSO and the MZO by virtue of a statute. Our analysis will therefore focus on whether Crown obtained a common law vested right to proceed with the Walgreens Project under the pre-UDO Ordinances.

A common law right to proceed with a development plan under a prior ordinance may vest in a party when:

> (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations "substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building" . . .
>
> (2) the obligations and/or expenditures are incurred in good faith,
>
> (3) the obligations and/or expenditures were made in reasonable reliance *on and after the issuance of a valid building permit,* if such permit is required, authorizing the use requested by the party . . .
>
> and (4) the amended ordinance is a detriment to the party.

*Browning-Ferris,* 126 N.C. App. at 171-72, 484 S.E.2d at 414 (internal citations omitted) (emphasis added). The landowner has the burden of establishing it has satisfied the elements for common law vested rights. *Id.* at 172, 484 S.E.2d at 414.

In the present case, Wilson challenges three out of the four elements arguing the expenditures Crown made for the Walgreens Project were not made in reliance on a valid building permit, were not made in good faith, and that Crown would not suffer any detriment by complying with the amended ordinance.

The timeline of pertinent events in the record establishes that Crown's expenditures, made prior to the enactment of the UDO, were not made in reasonable reliance on and after the issuance of a valid building permit. The events are summarized in the trial court's Judgment as follows:

> The review process for the Proposed Walgreens began in the first week of December 2006. . . . The site plan for the Walgreens

Project was drawn on November 30, 2007 and the plan sealed on December 17, 2007. The first submittal was made January 23, 2008, the second submittal was made May 19, 2008 and the fourth submitted on November 17, 2008. *The final site plan was approved, the building permit application approved and fees paid on February 23, 2009.* (Emphasis added.)

Additionally, during the Board's hearing, the City stipulated that the 23 February 2009 issuance of the building permit was the "final act establishing approval" of Crown's site plan.

Assuming *arguendo* that Crown made "substantial expenditures" prior to the adoption of the UDO, the City did not issue a permit for the Walgreens Project until more than one year after the enactment of the UDO on 4 February 2008. As our Supreme Court concluded in *Warner v. W & O, Inc.*, expenditures made by the landowner prior to issuance of a permit were "manifestly not made in reliance on the permit thereafter issued." 263 N.C. 37, 41, 138 S.E.2d 782, 786 (1964); *see also* David W. Owens, Land Use Law in North Carolina 150 (2006) ("expenditures made to secure government approval are not considered" as expenditures made in reliance upon government approval). Therefore, Crown failed to establish one of the elements necessary to acquire a common law vested right.

The City issued a permit for Crown's Walgreens Project based on the premise that the controlling ordinances were the LSO and the MZO. Because we have determined Crown did not acquire a common law vested right to proceed with its development plan under the LSO and the MZO, the permit was void *ab initio*. Additionally, any expenditures made by Crown after the issuance of the permit could not serve as a basis for a vested right. *See Mecklenburg County v. Westbery*, 32 N.C. App. 630, 635, 233 S.E.2d 658, 661 (1977) ("[T]he permit must have been lawfully issued in order for the holder of the permit to acquire a vested right in the use.").

Respondents' argument that Crown relied upon the City's assurances that the 50-foot buffer requirement would be waived is unavailing. While we do not conclude the City's assurances to Crown amounted to conditional approvals of the site plan, this Court rejected reliance on such actions in *Browning-Ferris*. 126 N.C. App. at 172, 484 S.E.2d at 415 (rejecting the plaintiffs' argument that substantial expenditures in reliance on the pre-amended ordinance, a letter from the town's planning director giving assurances of approval, or the planning department's conditional approval of the site develop-

ment plan gave rise to a common law vested right to proceed with construction in contravention of the then-enacted ordinance); *MLC Auto., LLC v. Town of S. Pines*, —— N.C. App. ——, ——, 702 S.E.2d 68, 76 (2010) ("We need not specifically address what types of government approval, short of a permit, are sufficient for the common law vested right analysis because *Browning-Ferris* establishes that expenditures in reliance on letters such as these are not sufficient to give rise to a vested right.")

Respondents claim in their brief that our courts have permitted other towns to "take the approach taken by the City of Mebane," but fail to cite to a single case in which our courts have done so. Rather, our case law makes clear, where a permit is required, expenditures made prior to the issuance of a permit are not considered in the common law vested rights analysis. Respondents' argument is dismissed.

Because we conclude Crown's expenditures for the Walgreens Project were not made in reasonable reliance on and after the issuance of a valid building permit, we need not reach Wilson's challenge to the other elements necessary to acquire a common law vested right. Similarly, because we conclude Crown does not have a common law vested right to proceed with its development project under the LSO and the MZO, we need not address Wilson's alternative argument that the buffer approved in Crown's development plan violates the LSO in that it fails to preserve the "spirit of the Ordinance" as required by section 2(d) of the LSO.

### B. Mootness

[2] Respondents contend that this appeal is moot because, before the filing of this appeal, the City of Mebane adopted amendments to the UDO that would entitle Crown to the building permit that was issued. We cannot agree.

A matter is rendered moot when "(1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 20, 652 S.E.2d 284, 298 (2007) (citation and quotation marks omitted), *appeal dismissed, disc. review denied*, 362 N.C. 177, 658 S.E.2d 485 (2008).

As discussed above, the permit issued under the requirements of LSO and the MZO for Crown's development plan was void *ab initio*. There is no evidence in the record that Crown's development plan

was approved under the UDO. Thus, the City's amendments to the UDO could not have eradicated the effects of the violation and Respondents' argument is dismissed.

### III. Conclusion

We conclude the expenditures on the Walgreens Project made by Crown, prior to the enactment of the UDO, were not made in reasonable reliance on and after the issuance of a valid building permit. Accordingly, Crown did not acquire a common law vested right to have its development plan evaluated under the LSO and the MZO. The building permit issued by the City of Mebane was void *ab initio*. The trial court's Judgment is

Reversed.

Judges CALABRIA and STROUD concur.