**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1317**

_____

PEM ENTITIES LLC,

                    Plaintiff - Appellant,

        v.

COUNTY OF FRANKLIN,

                    Defendant - Appellee.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Richard E. Myers, II, Chief District Judge. (5:20-cv-00407-M)

_____

Argued:  October 28, 2022                    Decided:  January 5, 2023

_____

Before THACKER and HEYTENS, Circuit Judges, and Lydia K. GRIGGSBY, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Judge Thacker and Judge Griggsby joined.

_____

Keith Nichols, KIRK PALMER & THIGPEN, P.A., Charlotte, North Carolina, for Appellant. James Wade Sheedy, DRISCOLL SHEEDY, P.A., Charlotte, North Carolina, for Appellee.

_____

TOBY HEYTENS, Circuit Judge:

A real estate development company asserts a North Carolina county violated the Federal Constitution and state law by imposing new rules for getting water and sewage services. The district court dismissed the complaint, concluding the company lacked standing to bring its takings and due process claims, its equal protection claim was too insubstantial to raise a federal question, and the court should not exercise jurisdiction over the state law claims once the federal claims were dismissed. Although the complaint's defects go to the merits, not jurisdiction, we agree with the district court's bottom line. Accordingly, we affirm.

I.

This case involves a multi-phase, single-family residential community in Franklin County, North Carolina. In 2005, the county's planning board approved a single page "Preliminary Subdivision Plan" that had been drafted by private entities and consisted mainly of a sketch laying out proposed lots and roads. The sketch separated the area into 15 different "phases," which could be "engineered, developed, and constructed in portions (not entirely at once in one continuous construction project)." JA 9–10. The bottom-left corner of the document listed six items under the caption "General Notes." JA 44. This case turns on the fourth item: "This development will be served by Franklin County water and sewer to be installed by the developer." *Id.* The document was stamped "Approved" and contains handwritten notations by county employees. *Id.*

2

In 2012, plaintiff PEM Entities LLC bought 150 acres of undeveloped land located in the preliminary subdivision plan. PEM did not immediately develop the property—indeed, the land remained undeveloped when PEM filed suit.

In 2019, the county adopted a water and sewer allocation ordinance that established an application process for new water and sewer connections and capped water allotments for new developments.[1] The ordinance proved unpopular with various developers, including PEM. The developers asserted they were exempt from the 2019 ordinance because the county's approval of the 2005 preliminary subdivision plan created a vested property right in water and sewer services that could not be undone by the later-enacted ordinance.

The same year the ordinance passed, the county and the developers (including PEM) reached a settlement over disputes involving road and water services. The agreement said the developers "may apply for a water and sewage allocation effective in 2020 and each subsequent year for up to 50 lots" and the "[c]ounty will rule on" those applications "in good faith, in [c]ounty's ordinary course of business and in a nondiscriminatory fashion, treating [d]evelopers on an equal footing with any other submitted applications." JA 77–78. The agreement also provided that "nothing herein is intended to provide or imply that [c]ounty is waiving or altering, in whole or in part, any of the provisions of the [2019 ordinance] with respect to the availability of water and sewer to the [p]roperty." JA 77.

---

[1] The county asserts the 2019 ordinance is an amended version of a 2017 one. Although a document attached to the complaint supports this view, we do not pursue the matter because it does not impact our analysis.

3

Finally, the agreement stated that "except as set forth in this [a]greement," "[a]ny vested rights accorded to the [p]roperty under the [2005 preliminary subdivision plan] shall not be modified or supplemented by any subsequent action including ordinance, rule, and/or regulation of [c]ounty." JA 78.

PEM submitted a water and sewage application to the county. PEM acknowledges it "never has recorded a plan of subdivision (plat) for any land" within the preliminary subdivision plan, nor has it "requested that [the county] approve for recording a final plan of subdivision for any land" within that plan. JA 16. PEM continued to insist, however, that the proposed subdivision plan exempted it from the 2019 ordinance.

In 2021, PEM sued the county in federal district court. Counts 1–5 and 9 raised purely state law claims. Count 6 asserted the 2019 law effects an unconstitutional taking of PEM's vested property right to receive water and sewer services under the preliminary subdivision plan. Counts 7 and 8 contended that, as applied to PEM, the 2019 ordinance violates the Due Process and Equal Protection Clauses.

The district court dismissed PEM's complaint. The court determined that neither the preliminary subdivision plan nor the settlement agreement "create[s] a property interest for [PEM] in an unlimited right to water and sewer service," and PEM had thus "failed to demonstrate a concrete, particularized injury for Article III standing" on its takings and due process claims. JA 143. The court next concluded PEM's equal protection challenge was "insufficient to state a 'substantial' claim" and thus failed to establish federal question jurisdiction. JA 145. The district court accepted PEM's concession that it had failed to allege diversity jurisdiction over the state law claims and declined to exercise supplemental

4

jurisdiction over those claims. We review the district court's dismissal of the federal law claims de novo, and its decision not to exercise supplemental jurisdiction over the state law claims for abuse of discretion. See *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (former); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 (4th Cir. 1997) (latter).

## II.

We agree with the district court's bottom-line conclusion but get there via a somewhat different route. See *Moore v. Frazier*, 941 F.3d 717, 725–26, 729 (4th Cir. 2019) (affirming dismissal of complaint that had been based on lack of subject matter jurisdiction on the ground that the complaint failed to state a claim on which relief could be granted).

## A.

It is important to avoid "confus[ing] weakness on the merits with absence of Article III standing." *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011). This is especially true because a claimant's standing implicates a federal court's subject matter jurisdiction, see *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016), meaning the issue "cannot be waived or forfeited," *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019), and the court may not issue any decision on the merits without confirming that standing exists, see *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).

PEM has standing to raise its takings and due process claims. PEM's inability to obtain water and sewer services on terms to which it claims it is entitled is an injury in fact that is fairly traceable to the challenged ordinance and would likely be remedied if PEM prevailed in this suit. See *Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022)

5

(listing requirements for Article III standing). Nothing more is needed to establish standing. Nor does the ultimate validity of PEM's constitutional claims bear on its ability to bring them. See *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 800–04 (2015) (explaining plaintiff state legislature had standing to raise its constitutional claim even though the Court ultimately concluded the legislature "does not have the exclusive, constitutionally guarded role it asserts").

PEM's problem is a merits one. Both PEM's takings and due process claims depend on having a constitutionally protected "property" interest. U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"), amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). And we agree with the district court that neither the 2005 preliminary subdivision plan nor the 2019 settlement agreement creates the sort of property interest PEM asserts.

"Property interests" "are not created by the Constitution." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

In North Carolina, "[a] party's common law right to develop and/or construct" does not vest until four requirements are satisfied. *Browning-Ferris Indus. of S. Atl., Inc. v. Guilford Cnty. Bd. of Adjustment*, 484 S.E.2d 411, 414 (N.C. Ct. App. 1997) (citing cases). One such requirement is that—if a given activity requires a permit—any obligations or expenditures must have been "made in reasonable reliance on and after the issuance of a

6

valid building permit . . . authorizing the use requested by the party." *Id.*; see *id.* (citing three decisions by the Supreme Court of North Carolina).

PEM does not assert it ever obtained a building or construction permit for the proposed subdivision. Nor could it. A different Franklin County ordinance—which is unchallenged here—requires developers like PEM to receive final plan approval before any permit may issue. See Unified Development Code of Franklin County, NC, art. 28, § 28-4(C)(12). And PEM acknowledges it has "never" even "requested that [the county] approve for recording a final plan of subdivision for any" of the land PEM owns. JA 16.

PEM alleges it has spent about $100,000 "on engineering and surveys and drillings to prepare" its land "for development." JA 27. But North Carolina courts have emphasized that expenditures before the issuance of a permit are "not made *in reliance on*" a then-unissued permit, *Warner v. W & O, Inc.*, 138 S.E.2d 782, 786 (N.C. 1964) (emphasis added), and they have rejected attempts to turn "preliminary government approval" into a "vested right." *Browning-Ferris*, 484 S.E.2d at 414; see *MLC Auto., LLC v. Town of S. Pines*, 702 S.E.2d 68, 74–79, 75 n.1 (N.C. Ct. App. 2010) (neither then-current zoning rules nor letters from a town's planning department created a vested right). Indeed, the word "preliminary"—which is stamped right on the document PEM relies on, JA 44—comes close to being an antonym for "final" or "vested."[2]

---

[2] Even if PEM could have a vested property interest based on the preliminary subdivision plan, the language PEM cites does not confer approval for an unlimited allocation of water, unencumbered by any allocation restrictions. Rather, it simply provides that the development would be "served by Franklin County water and sewer." JA 44. When (Continued)

7

Nor did the 2019 settlement agreement create a new vested property right. To the contrary, that document took care to preserve the status quo, declaring that "[a]ny vested rights" created by the 2005 preliminary subdivision plan "shall not be *modified or supplemented by* any subsequent action . . . of [the] [c]ounty." JA 78 (emphasis added). As we just explained, however, that plan created no vested property right.

Without a constitutionally protected property interest, PEM's takings and due process claims fail as a matter of law. Accordingly, we affirm the district court's dismissal of PEM's takings and due process claims because they fail to state a claim on which relief can be granted.

B.

We likewise conclude the district court was right to dismiss PEM's equal protection claim but should have done so for failure to state a claim rather than lack of jurisdiction.

Congress has given district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In nearly all situations, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Here, the cause of action for PEM's equal protection claim comes from 42 U.S.C. § 1983, a federal statute.

To be sure, "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under" 28 U.S.C. § 1331, and this Court has sometimes dismissed suits brought

---

it comes to unlimited water, PEM had at best a unilateral expectation rather than any "legitimate claim of entitlement." *Roth*, 408 U.S. at 577.

8

under Section 1983 "because the federal claims were insubstantial and were pretextual state law claims." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). At the same time, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). "The preliminary jurisdictional test of facial insubstantiality is a rigorous one against the challenger," and "[t]he mere claim that a right exists under federal law suffices to avoid summary dismissal unless it is facially insubstantial or frivolous." *Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 719 (4th Cir. 1990). Only when a claim asserted under federal law is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy" should the complaint be dismissed for lack of jurisdiction. *Oneida Indian Nation v. Oneida Cnty.*, 414 U.S. 661, 666 (1974).

PEM's equal protection claim gets over this low bar. The district court identified various deficiencies in PEM's equal protection claim, most notably that PEM "fail[ed] to allege": (1) how "it is similarly situated to developers that received water and sewer service prior to the implementation of" the 2019 ordinance; (2) "that developers requesting a new allocation following implementation of the [2019 ordinance] have received the allocation without the requirement to apply for it"; and (3) even if PEM were treated differently, that the county "had no rational basis for such treatment." JA 146.

Those problems are real. But they are problems with the *merits* of PEM's equal protection claim and the *sufficiency* of the allegations PEM made in support of it. See *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) ("To *succeed* on an equal

9

protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." (quotation marks omitted; emphasis added)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)). Thus, although we agree with the district court's dismissal of PEM's equal protection claim, we conclude it also should have been for failure to state a claim on which relief can be granted rather than lack of subject matter jurisdiction.

## C.

Having concluded the district court correctly dismissed all of PEM's federal claims, we see no abuse of discretion in the court's decision not to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c); *Waybright v. Frederick Cnty.*, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep [this case] in federal court . . . but there is no good reason to do so.").[3]

\*    \*    \*

---

[3] In contrast, if the district court had been right in dismissing the federal claims for lack of subject matter jurisdiction, the proper approach would have been dismissing the state law claims for lack of jurisdiction under Section 1367(a) rather than declining to exercise jurisdiction under Section 1367(c). If there is no anchoring federal claim over which the court has "original jurisdiction," dismissal of the state law claims is mandatory because there is no basis for supplemental jurisdiction in the first place. 28 U.S.C. § 1367(a).

PEM seeks preferential treatment to bypass a regulatory ordinance enacted years after it acquired title to undeveloped land. But PEM had no constitutionally protected property right in the unlimited provision of water and sewer services unencumbered by future regulation, nor has it identified any basis for concluding it was subject to unconstitutional disparate treatment. Because PEM's constitutional claims fail on the merits, the district court's dismissal of PEM's complaint is

*AFFIRMED.*