MICHAEL WEINMAN ASSOCIATES GENERAL PARTNERSHIP, PLAINTIFF v. TOWN
OF HUNTERSVILLE, NORTH CAROLINA, DEFENDANT

No. COA00-1257

(Filed 20 November 2001)

**Zoning— conditional use—commercial property—statutory vested right**

Once defendant town approved a highway commercial conditional district zoning classification for plaintiff landowner's property in the exercise of its extraterritorial zoning jurisdiction and in effect approved a site specific development plan for the property, plaintiff had a vested right under N.C.G.S. § 160A-385.1 and the town's zoning ordinance to develop the property in accordance with this zoning classification for three years. Therefore, an ordinance rezoning the property from commercial to residential was null and void.

Appeal by plaintiff from judgment entered 24 August 2000 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2001.

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by Roy H. Michaux, Jr. and John H. Carmichael for plaintiff-appellant.*

*Buckley, McMullen & Buie, P.A., by Charles R. Buckley III; and Parham, Helms, Harris, Blythe & Morton, by Robert B. Blythe, for defendant-appellee.*

WALKER, Judge.

Plaintiff initiated this action on 13 September 1999 seeking a declaratory judgment ordering that a zoning ordinance adopted by defendant be declared null and void. Following discovery, both parties moved for summary judgment. After a hearing, the trial court granted defendant's motion.

The facts of this case are not in dispute. In April 1988, plaintiff acquired a 168.098-acre parcel of land (property) located at the intersection of Beatties Ford Road and Neck Road in Mecklenburg County (County). At that time, the County maintained zoning jurisdiction over the property and it was zoned "rural." On 17 January 1991, plaintiff petitioned the County Planning Commission to re-zone the property as an R-9 Planned Unit Development (PUD), a conditional use

zoning district. Along with its petition, plaintiff included a technical data plan which outlined a site specific development proposal for the property. This plan proposed the property be used for several development projects including single family and multi-family housing, a neighborhood school and a retail shopping center. On 17 June 1991, the County approved plaintiff's re-zoning petition.

In 1997, defendant adopted an ordinance extending its extraterritorial zoning jurisdiction (ETJ) to certain areas, including plaintiff's property. In preparation of the transfer in zoning authority, plaintiff engaged a planning consultant, Bob Young (Young), to ensure that the zoning classification placed on its property conformed as nearly as possible to the County's PUD zoning. Young subsequently met with defendant's Planning Director, Ann Hammond (Hammond), to discuss the zoning classification to be placed on plaintiff's property. Following this meeting, Hammond agreed to recommend to defendant's Planning Board that the property be divided and zoned as three separate parallel conditional zoning districts. Each district incorporated the development conditions included in the site specific development proposal plaintiff originally submitted to the County in 1991. Defendant's Planning Board then integrated the three parallel conditional zoning districts into a comprehensive zoning petition (Petition No. 97-19) which proposed to reclassify all areas brought in under defendant's ETJ ordinance. On 4 November 1997, after notice and a public hearing, defendant approved Petition No. 97-19.

In August 1998, plaintiff contracted with the Charlotte-Mecklenburg Board of Education to sell the portion of the property which was proposed to be used as a school site. One month later, plaintiff entered into a contract with Niblock Development Corp. (who subsequently assigned the contract to Niblock-Ridgeline, LLC) to sell the portion which was proposed for single family and multi-family housing. Consequently, plaintiff retained only 8.65 acres—the portion which it had originally proposed for a retail shopping center (8.65 acres or commercial site). Under Petition No. 97-19, defendant zoned this commercial site as Highway Commercial Conditional District (Highway Commercial (CD)), a parallel conditional zoning district.

However, in response to community concerns that the area was losing its "rural character," defendant's Planning Board initiated a petition (Petition No. 99-08) "down-zoning" the commercial site to Neighborhood Residential. This neighborhood residential classification would not permit the location of a retail shopping center on the

8.65 acres. *See* Town of Huntersville Zoning Ordinance Art. 3.2.3 (2001). At a 22 June 1999 hearing held by defendant pursuant to Petition No. 99-08, Hammond, in reply to a commissioner's question, stated that there were "certain conditions in the original county planned unit development plan that . . . [defendant] continue[d] to respect." Also, evidence was presented at this hearing that these conditions included the location of the commercial site relative to Beatties Ford Road and Neck Road, a limit on any commercial construction to 70,000 square feet, a 100 feet minimum setback from Beatties Ford Road, and street access points. Nevertheless, on 19 July 1999, defendant approved Petition No. 99-08.

Plaintiff contends that defendant's action of re-zoning the commercial site should be declared null and void because it had a vested right to develop the 8.65 acres in accordance with its Highway Commercial (CD) zoning classification. This Court has recognized that a vested right in a particular land use is established through one of two means. *See Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997). One means is through compliance with the applicable statutes. *See Id.*; N.C. Gen. Stat. § 153A-344.1 (1999) (counties); N.C. Gen. Stat. § 160A-385.1 (1999) (cities and towns). The second means is to qualify by virtue of satisfying common law requirements. *See Town of Hillsborough v. Smith*, 276 N.C. 48, 54, 170 S.E.2d 904, 909 (1969); N.C. Gen. Stat. § 153A-344.1(f)(2) (1999) (counties); N.C. Gen. Stat. § 160A-385.1(f)(2) (1999) (cities and towns). In this case, plaintiff argues it has a vested right by statute and by common law.

We begin our analysis of the criteria for the establishment of a statutory vested right by reviewing the law surrounding the development of the vested right doctrine and use it as a foundation for our discussion. Under our Constitution, the State and its local governing bodies are empowered to enact regulations restricting property owners use of their property. N.C. Const. art. II, § 1; *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E.2d 78 (1969). This power to enact land-use restrictions includes the power to amend or repeal previously enacted restrictions. *See McKinney v. High Point*, 239 N.C. 232, 237, 79 S.E.2d 730, 734 (1954). Consequently, no property owner has a *per se* vested right in a particular land-use regulation such that the regulation could remain "forever in force, inviolate and unchanged." *Id.* Competing with the State's constitutional authority over land-use are the property owners' constitutional entitlement to due process of law which forbids the State or its local governing

bodies from arbitrarily or capriciously restricting owners' rights to use their property for lawful purposes. U.S. Const. amend. XIV, § 1; N.C. Const. art. I, § 19; *In re Ellis*, 277 N.C. 419, 424, 178 S.E.2d 77, 80 (1970).

At common law, the vested rights doctrine evolved as a balancing mechanism between these two competing constitutional interests. *See Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 62, 344 S.E.2d 272, 274 (1986) (citation omitted). The doctrine recognizes that where property owners have reasonably made a substantial expenditure of money, time, labor or energy in a good faith reliance of a government approved land-use, they have a vested right. *See Browning-Ferrris*, 126 N.C. App. at 171, 484 S.E.2d at 414; *and Russell v. Guilford County*, 100 N.C. App. 541, 543, 397 S.E.2d 335, 337 (1990). This vested right attaches to and runs with the property permitting the owner to make use of it in accordance with the government approved land-use. *See Warner v. W & O, Inc.*, 263 N.C. 37, 43, 138 S.E.2d 782, 786-87 (1964).

Despite the compromising nature of common law vested rights, controversy remains with respect to the doctrine's specific requirements. *See* David W. Owens, *Legislative Zoning Decisions: Legal Aspects* 118 (1999). In addition, the growth in the practice of conditional use zoning following our Supreme Court's decision in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579 (1988), fostered the need to provide more certainty and stability to the land-use planning process.

In response, our General Assembly created an alternative statutory means of establishing a vested right. *See* N.C. Gen. Stat. §§ 160A-385 *et seq.* (cities and towns) (1999); N.C. Gen. Stat. §§ 153A-344 *et seq.* (counties) (1999). This statutory vested right incorporates the same balance of constitutional interests present in the common law doctrine.

The General Assembly finds and declares that it is necessary and desirable, as a matter of public policy, to provide for the establishment of certain vested rights in order to ensure reasonable certainty, stability, and fairness in the land-use planning process, secure the reasonable expectations of landowners, and foster cooperation between the public and private sectors in the area of land-use planning. Furthermore, the General Assembly recognizes that city approval of land-use development typically follows

significant landowner investment in site evaluation, planning, development costs, consultant fees and related expenses.

The ability of a landowner to obtain a vested right after city approval of a site specific development plan or a phased development plan will preserve the prerogatives and authority of local elected officials with respect to land-use matters. There will be ample opportunities for public participation and the public interest will be served. These provisions will strike an appropriate balance between private expectations and the public interest, while scrupulously protecting the public health, safety, and welfare.

N.C. Gen. Stat. § 160A-385.1(a) (1999).

Accordingly, property owners secure a statutory vested right with the "valid approval, or conditional approval, of a site specific development plan or a phased development plan, following notice and public hearing by the city with jurisdiction over the property." N.C. Gen. Stat. § 160A-385.1(c) (1999). Once established, the vested right entitles the landowner to "undertake and complete the development and use of said property under the terms and conditions of the site specific development plan or the phased development plan including any amendments thereto." Id. Moreover, the right continues despite any "[a]mendments, modifications, supplements, repeal or other changes" to the zoning regulations. N.C. Gen. Stat. § 160A-385(b) (1999). The vested right lasts for a statutory minimum of two years but may be extended at the city's discretion up to a maximum of five years. N.C. Gen. Stat. § 160A-385.1(d)(1) and (2) (1999).

With this background in mind, we turn to plaintiff's contention that it has a statutory vested right to develop the commercial site in accordance with its former Highway Commercial (CD) classification. Critical to our analysis is whether defendant approved a site specific development plan when it brought plaintiff's property within its ETJ. N.C. Gen. Stat. § 160A-385.1(b)(5) defines a site specific development plan as:

a plan which has been submitted to a city by a landowner describing with reasonable certainty the type and intensity of use for a specific parcel or parcels of property. Such plan may be in the form of, but not limited to, any of the following plans or approvals: A planned unit development plan, a subdivision plat, a preliminary or general development plan, a conditional or special use permit, a conditional or special use district zoning plan, or

any other land-use approval designation as may be utilized by a city.

N.C. Gen. Stat. § 160A-385.1(b)(5) (1999). Pursuant to this statutory definition, each local governing body individually determines through its zoning ordinance what is considered a site specific development plan within its jurisdiction. *See Id.*

Our review of defendant's zoning ordinance reveals five different items, each of which constitutes within its jurisdiction a site specific development plan for purposes of N.C. Gen. Stat. § 160A-385.1: "(a) a parallel conditional use district; (b) a special use permit; (c) any overlay district for which a site specific development plan is required; (d) a conditional district; or (e) an approved cluster development plan." Town of Huntersville Zoning Ordinance, art. 2.2.2 (a)-(e) (2001). The ordinance further states that once one of these items is approved, a vested right is established which "shall remain in force for three years from date of approval (unless otherwise specified)." *Id.* Both parties agree that Highway Commercial (CD) is a parallel conditional use district and that when defendant approved Petition No. 97-19, this zoning classification was affixed to the commercial site.

However, defendant argues that in order to establish a statutory vested right, plaintiff must have petitioned for a re-zoning of its property and submitted either a "site specific development plan" or a "phased development plan." Additionally, defendant contends that its 4 November 1997 action was not an "amendment, modification, supplement, repeal or other change[]" to its zoning map, thereby precluding plaintiff from establishing a vested right pursuant to its zoning ordinance. We disagree.

The essential requirements for the establishment of a statutory vested right are set out in the subsection of N.C. Gen. Stat. § 160A-385.1 entitled "Establishment of vested right." N.C. Gen. Stat. § 160A-385.1(c) (1999). The requirements include: (1) approval (or conditional approval) by the appropriate governing body of either a site specific or phased development plan; (2) public notice; and (3) an open hearing. *Id.* Here, the public hearing notice filed in connection with Petition No. 97-19 identified the general Highway Commercial zoning classification. The notice further indicated that a "(CD)" designation is "[used] with a general zoning district to modify development conditions according to *an approved conditional site plan.*" (emphasis added). Therefore, we conclude that once defendant approved Petition No. 97-19 and in turn the Highway Commercial

(CD) zoning classification for the 8.65 acres, the essential require-ments for establishing a statutory vested right had been met.

Moreover, to adopt the interpretation the defendant urges we give the statute would be inconsistent with the concept of conditional use zoning. In *Chrismon*, our Supreme Court upheld the practice of conditional use zoning provided, "the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." *Chrismon*, 322 N.C. at 617, 370 S.E.2d at 583. In reaching its holding, the Court recognized that the true benefit of conditional use zoning lies in the flexibility the practice furnishes to local governing bodies:

> Conditional use zoning anticipates that when the rezoning of cer-tain property within the general zoning framework . . . would con-stitute an unacceptably drastic change, such a rezoning could still be accomplished through the addition of certain conditions or use limitations. Specifically, conditional use zoning occurs when a governmental body, without committing its own author-ity, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning.

*Id.* at 618, 370 S.E.2d at 583-84 (citation omitted). In accordance with this concept of conditional use zoning, our General Assembly created a mechanism by which a property owner can be assured that once a conditional use plan is approved, it will not be disturbed for a reasonable period of time.[1] This mechanism is the statutory vested right.

Our review of the record reveals that prior to defendant's approval of Petition No. 97-19, defendant's Planning Director Hammond met with plaintiff's Planning Consultant Young to develop a zoning classification for the entire 168.098 acres. After this meeting, Hammond agreed to recommend that plaintiff's property be zoned as closely as possible to the zoning classification which had existed under the County's jurisdiction. Defendant's ordinance provides that a Highway Commercial (CD) classification is "a parallel conditional use district" and that said district is a "site specific development plan" for purposes of N.C. Gen. Stat. § 160A-385.1. Further, defendant admits that this zoning classification affixed to the 8.65 acres carried

---

1. We note that N.C. Gen. Stat. § 160A-385.1 was adopted effective in 1991 following *Chrismon*.

with it "conditions similar to the prior zoning under Mecklenburg County."

Accordingly, we conclude that once defendant adopted Petition No. 97-19 affixing a Highway Commercial (CD) zoning classification to the 8.65 acres, it approved a conditional use plan and a statutory vested right attached. This right entitled plaintiff to make use of the property according to the conditions of the Highway Commercial (CD) zoning classification for a period of three years. To interpret defendant's zoning ordinance and N.C. Gen Stat. § 160A-385.1(c) as defendant urges would only serve to undermine the "certainty, stability and fairness in the land-use planning process" the vested right doctrine seeks to create. N.C. Gen. Stat. § 160A-385.1(a).

However, our decision does not preclude defendant from enforcing provisions in its ordinance and building code with regards to such items as building specifications, location of utilities, street layout and other details that defendant's permitting process may require.

Because we conclude plaintiff has a statutory vested right we do not address the issue of whether it also has a common law vested right.

In summary, the trial court's granting of summary judgment in favor of defendant is reversed. The case is remanded to the trial court for entry of summary judgment in favor of plaintiff and to address plaintiff's request that its vested right be extended beyond 4 November 2000.

Reversed and remanded.

Judges McGEE and HUDSON concur.