DIETZ, Judge.
Along the shore of scenic Lake Lure in Rutherford County is a small resort lodge operating as the Lodge on Lake Lure. The Lodge has existed in one form or another for nearly a century. In 2015, the owners of the Lodge proposed a conditional rezoning of the property that would permit it to grow in size and scope, including more overnight guests, a new lakeside restaurant, and offsite parking at two properties bordering a nearby golf course.
After the Town of Lake Lure approved the conditional zoning application, Plaintiffs, who are nearby landowners of residential homes or vacation rentals, challenged the newly enacted conditional zoning ordinance in court. The trial court ultimately granted summary judgment in favor of the Town and the Lodge owners on most claims, but invalidated the portion of the conditional zoning ordinance that permitted remote parking on the properties bordering the golf course.
As explained below, we affirm the trial court's determination that the challenged ordinance was not an ultra vires act; was not an arbitrary and capricious zoning act; was not an illegal spot zoning; and was procedurally proper. We also agree with the trial court's determination that the ordinance impermissibly removed restrictions on commercial parking in certain residential districts, amounting to a de facto rezoning without the required notice and procedure. But we disagree with the trial court's conclusion that a separate offsite parking provision was invalid because it permitted the Lodge to use offsite parking at other locations throughout the Town. We therefore affirm the trial court's order in part and reverse in part.
Facts and Procedural History
Lake Lure is a small town located along the shores of the 720-acre lake of the same name in Rutherford County. Along the waterfront, Defendant Lake Lure Lodge, LLC owns a seventeen-room lodge and private dining club situated on a scenic multi-acre tract of land.
The Lodge was first built in 1937 and served for decades as a private retreat for state highway patrol officers. In 1990, the Lodge opened to the general public and has since been a recreational lodging destination. The Lodge is a key driver of Lake Lure's economy.
The properties surrounding the Lodge consist of several zoning districts, including R-1 Residential, GU Governmental-Institutional, R-3 Resort Residential, and R-4 Residential/Office. For example, roughly 1,500 feet south of the Lodge Property, there is property zoned R-3 that is home to an active summer camp regularly attracting bus and delivery truck traffic. Also nearby is a GU district that is home to a fire station and a golf course with a club house.
The Plaintiffs' properties-the closest of which is approximately 2,000 feet away from the Lodge Property-are all zoned R-1 Residential. The principal use of land in R-1 Residential zoning districts "is for single-family dwellings," but the Town's Zoning Regulations permit other uses, including vacation rental properties and, in certain circumstances, parking for nearby commercial properties. Zoning Regulations, Town of Lake Lure, § 92.026, § 92.103. There are 21 vacation rental homes within a 2,000 foot radius of the Lodge Property, including rental properties owned by at least two of the Plaintiffs.
When Lake Lure Lodge, LLC purchased the Lodge Property in 2015, it was zoned R-1 Residential. As part of its comprehensive site plan, the Town's future land use map designates the Lodge Property as R-3 Resort Residential.
On 31 August 2015, the Lodge submitted an application to the Town to rezone the Lodge Property from an R-1 Residential district to an R-3CD Resort Residential conditional district. The Lodge proposed various expansions to the property and the lodge itself, including adding extra parking for guests and adding a new restaurant over the lodge's boathouse that would extend over the water. On 9 October 2015, the Lodge submitted a "Petition for Conditional District Zoning" with a general development plan and detailed project narrative showing the proposed expansion.
Because the Lodge did not have sufficient parking on the property to accommodate the proposed expansion, the Lodge bought two residential properties approximately 1,700 feet away from the Lodge Property and directly across the street from the golf course in the GU district. Both Offsite Parcels are zoned R-1 Residential. The Lodge submitted a drawing to town staff showing seventy proposed parking spaces on these two offsite parcels, although that drawing does not appear to be part of the conditional zoning application.
On 26 October 2015, the town held a "neighborhood compatibility meeting" to discuss the Lodge expansion plan with residents. The Lodge also met with smaller community groups to discuss the expansion plan. The Lodge then modified the development plans in response to comments from Town residents.
On 17 November 2015 and 1 December 2015, the Lake Lure Zoning and Planning Board held two meetings to consider the Lodge's application. In response to concerns at the November meeting about the size and location of a proposed boathouse restaurant that would extend out over the lake, the Lodge proposed altering the plan to a lakeside restaurant that was fully on the shore and smaller in size.
Ultimately, the Zoning and Planning Board recommended approval of the application. On 15 December 2015, the Lake Lure Town Council held a special meeting to review the Lodge's conditional zoning application and a proposed development plan. The Town Council heard public comments, including criticism of the proposed offsite parking. The Town Council also heard from representatives of the Lodge, who explained that they had changed their "boathouse restaurant concept" to a "lakeside restaurant which we heard from constituents would be more appropriate and better received."
The Town Council held a formal, public hearing on 22 December 2015. Consistent with the applicable notice requirements, the Town Council advertised this public hearing through a local newspaper ad; signs posted on and near the Lodge Property; and letters sent to nearby landowners. At the hearing, members of the Town Council discussed both the offsite parking plans and the lakeside restaurant. When the hearing ended, the Town Council adopted Ordinance No. 15-12-22, approving the conditional zoning for the Lodge Property and finding that it was consistent with the Town's 2007-2027 Comprehensive Plan.
On 22 February 2016, Plaintiffs sued for declaratory relief, seeking to invalidate the newly enacted ordinance based on claims of procedural defects; deprivation of due process; action that was ultra vires , arbitrary and capricious, and contrary to fundamental zoning concepts; illegal spot zoning; and illegal contract zoning. After discovery, both parties moved for summary judgment.
Following two hearings, the trial court entered an order on 19 January 2017 granting summary judgment for Plaintiffs on their claim that the challenged ordinance's offsite parking provisions were invalid. The trial court found that these modifications were "arbitrary and unreasonable" because they allowed offsite parking "to be established anywhere without any relationship to the location of the Conditional District." The trial court also found that the modifications resulted from "inadequate" notice procedures because the ordinance effectively rezoned these two residential properties to permit commercial parking. The trial court granted summary judgment in favor of Defendants on all the remaining claims and upheld the remaining portions of the ordinance.
Plaintiffs timely appealed and the Lodge timely cross-appealed.
Analysis
The trial court entered summary judgment on the parties' claims for declaratory judgment. We review that summary judgment ruling de novo . In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).
I. Ultra Vires Conditional Zoning
Plaintiffs first argue that the conditional zoning ordinance at issue exceeded the lawful authority conferred by the General Assembly-in other words, that the Town acted ultra vires when it enacted the conditional zoning ordinance at issue. To resolve this question, we first address the distinction between "zoning" and "conditional zoning." Our case law defines "zoning" as a "regulation by a local governmental entity of the use of land within a given community, and of the buildings and structures which may be located thereon, in accordance with a general plan." Chrismon v. Guilford County , 322 N.C. 611, 617, 379 S.E.2d 579, 583 (1988). "Fundamentally, the primary purpose of ... zoning ordinances is to specify the types of land use activities that are permitted, and prohibited, within particular zoning districts." Lanvale Properties, LLC v. County of Cabarrus , 366 N.C. 142, 158, 731 S.E.2d 800, 811-812 (2012). Zoning is a legislative act and is generally subject to judicial intervention only if it is exercised "arbitrarily or capriciously." Walton N.C., LLC v. City of Concord , --- N.C. App. ----, ----, 809 S.E.2d 164, 170 (2017).
Any zoning or rezoning action requires a formal amendment to the municipality's zoning ordinance comprised of (1) text describing what uses are permitted and what development standards must be met within a district; and (2) a map depicting where a proposed district is to be situated. Town of Green Level v. Alamance County , 184 N.C. App. 665, 670, 646 S.E.2d 851, 855 (2007). Additionally, a municipality must hold a public hearing and meet certain notice requirements with respect to zoning decisions. N.C. Gen. Stat. § 160A-384.
In Chrismon , our Supreme Court recognized "conditional use zoning," a two-step process consisting of a legislative zoning decision to create a conditional district and a quasi-judicial action of granting a conditional use permit. 322 N.C. at 617-18, 370 S.E.2d at 583 ; Village Creek Property Owners' Ass'n, Inc. v. Town of Edenton, 135 N.C. App. 482, 487, 520 S.E.2d 793, 796 (1999). Later, this Court recognized a new variation known as "conditional zoning"-an entirely legislative action that combines the two-step process into one proceeding where the rezoning decision is made concurrently with approval of the site-specific standards or site plan. Massey v. City of Charlotte, 145 N.C. App. 345, 353, 355, 550 S.E.2d 838, 844, 845 (2001) ; Summers v. City of Charlotte , 149 N.C. App. 509, 516-17, 562 S.E.2d 18, 24 (2002).
Both conditional use zoning and conditional zoning were created to afford greater flexibility to local authorities in response to the rigidity of traditional zoning. Chrismon , 322 N.C. at 622, 370 S.E.2d at 586 ; Michael Weinman Assocs. Gen. P'ship v. Town of Huntersville , 147 N.C. App. 231, 237, 555 S.E.2d 342, 347 (2001). In 2005, the General Assembly codified the conditional zoning process. S.L. 2005-426, secs. 6(a). Under N.C. Gen. Stat. § 160A-382(a), a town may be divided into various zoning districts that include conditional zoning districts. Property may be placed in a conditional district in response to a petition from the property's owner, who may propose "[s]pecific conditions" and "site-specific standards." Id. § 160A-382(b). "[T]hose conditions mutually approved by the city and the petitioner may be incorporated into the zoning regulations." Id.
The Town of Lake Lure created a zoning process consistent with this statute by adopting a zoning regulation permitting "conditional districts" that are defined as "districts with conditions voluntarily added by the applicant and approved in a legislative procedure by the Town Council in accordance with N.C.G.S 160A-382." Zoning Regulations , § 92.019. Conditional districts in Lake Lure must "consist of land under unified control which may be planned and developed as a single development or as an approved programmed series of development phases by multiple developers." Id. § 92.019(A)(1).
The town's conditional zoning regulation falls well within the authority conveyed by the General Assembly, and the Town enacted the conditional zoning ordinance at issue in this case under the authority establish by its general conditional zoning regulations. Thus, the trial court properly rejected Plaintiffs' claim that the challenged conditional zoning ordinance is ultra vires .
II. Arbitrary and Capricious Conditional Zoning
Plaintiffs next contend that the ordinance, even if within the Town's power to enact, is the product of an arbitrary and capricious decision-making process and thus must be invalidated. Conditional zoning, like all zoning, "may not be exercised in an arbitrary or capricious manner." Green Level , 184 N.C. App. at 673, 646 S.E.2d at 856. But our review on appeal is constrained by the fact that conditional zoning is a legislative action; this Court cannot "substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare." Kerik v. Davidson County , 145 N.C. App. 222, 228-29, 551 S.E.2d 186, 191 (2001). Thus, "[w]hen the most that can be said against such [rezoning] ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere." Id.
That is precisely the situation here. Plaintiffs criticize the Town's purported "disregard for pertinent undisputed facts and law and the total lack of a determining principle" but, in response, the Lodge and the Town both point to their own undisputed facts, and principles from the Town's comprehensive plan, that drove the Town's decision-making.
For example, since at least the 1920s, the Town's general plan has identified the Lodge Property as a location for a "resort." Over time, the scope and function of the Lodge as a resort or destination for out-of-town visitors gradually expanded. And the Town's future land use plan recommends zoning the property "resort residential," thus anticipating uses including restaurants or commercial hospitality uses. Moreover, in its evaluation of the Lodge's proposal, the Town heard from the community and the zoning ordinance ultimately adopted reflects a reasoned consideration of those community concerns.
In short, the trial court properly rejected this claim because the record demonstrates that the Town's legislative process was a reasoned one and, although the outcome might be viewed as "fairly debatable" by its opponents, it was not arbitrary and capricious as a matter of law. Id.
III. Impermissible Spot Zoning
Plaintiffs next argue that the conditional zoning ordinance at issue in this case is a form of illegal spot zoning. Spot zoning occurs where a zoning ordinance (1) "singles out and reclassifies a relatively small tract owned by a single person," (2) that is "surrounded by a much larger area uniformly zoned," (3) and that either imposes greater restrictions on the smaller tract or "relieve[s] the small tract from restrictions to which the rest of the area is subjected." Blades v. City of Raleigh , 280 N.C. 531, 549, 187 S.E.2d 35, 45 (1972). Spot zoning is illegal, but only in the absence of a "clear showing of a reasonable basis" for it. Chrismon , 322 N.C. at 627, 370 S.E.2d at 589.
In a spot zoning analysis, the property "must be examined relative to the vast majority of the land immediately around it." Mahaffey v. Forsyth County , 99 N.C. App. 676, 682, 394 S.E.2d 203, 207 (1990). Plaintiffs focus their argument on the other properties zoned R-1 Residential in the area around the Lodge and the nearby offsite parking properties. Those other R-1 properties are residential homes and vacation rental homes. But this focus ignores other nearby properties that undermine Plaintiffs' claim. For example, the Lodge and the offsite parking properties are closer to a golf course, a large summer camp, and to property zoned R-4 Residential than to much of the R-1 Residential property that Plaintiffs identify as the immediately surrounding property. Simply put, the properties in the area immediately surrounding the Lodge and the offsite parking locations are far more diverse than Plaintiffs claim.
Moreover, as explained above, the Town's general plan has consistently identified the Lodge Property as a "resort" for nearly a century and, during that time, it has been used for hospitality purposes for out-of-town visitors, including both lodging and dining purposes. The Town's future development plan also would zone this property R-3 Residential, permitting even broader development for resort or hospitality uses. Thus, mindful that "[t]he standard is not the advantage or detriment to particular neighboring landowners, but rather the effect upon the entire community as a social, economic and political unit," Chrismon , 322 N.C. at 629, 370 S.E.2d at 590, we hold that the trial court properly determined that the property was not uniformly surrounded solely by R-1 residentially zoned property and that there was a reasonable basis for this zoning that serves the public interest. Accordingly, the Town's action was not illegal spot zoning.
IV. The Lakeside Restaurant
Plaintiffs next argue that the Town violated its own procedural rules because the provision permitting the lakeside restaurant was a "substantial addition or modification to the general development plans" that was never reviewed or approved by the Zoning and Planning Board. Thus, Plaintiffs contend, the amended ordinance is procedurally defective and must be struck down.
The flaw in this argument is that it treats the lakeside restaurant as an entirely new concept not part of the original application. That is inaccurate. The application always included plans for a restaurant; the difference is that the initial plan proposed a more controversial "boathouse restaurant" that would have extended out over the water. The public expressed concern about this boathouse concept. To accommodate those concerns, the Lodge changed the restaurant from a "boathouse" concept to a "lakeside" concept located on shore.
Our Supreme Court has held that this type of change during the zoning process does not require new notice and an entirely new zoning hearing. Heaton v. City of Charlotte , 277 N.C. 506, 518, 178 S.E.2d 352, 359 (1971). The Court explained that a change to a zoning proposal does not require new notice or a new hearing "when the alteration of the initial proposal is insubstantial." Id. The Court then held that "[a]lteration of the initial proposal will not be deemed substantial when it results in changes favorable to the complaining parties." Id.
Here, the Lodge proposed relocating the restaurant from over the water to the shoreline because, during the opportunities for public comments, members of the impacted community expressed concern for the boathouse concept and indicated that a lakeside concept "would be more appropriate and better received." In light of this fact, the trial court properly determined that the switch from boathouse restaurant to lakeside restaurant was not a substantial change that required an entirely new zoning proposal and corresponding procedure.
Plaintiffs also argue that the lakeside restaurant is not permitted at the Lodge because it is a "stand-alone restaurant building that is not an accessory to or in conjunction with the Lodge." Again, we reject this argument.
Plaintiffs' argument turns largely on a misunderstanding of the phrase "in conjunction with." The Town's zoning regulations permit, as a conditional use, "restaurants, golf courses, and other uses designed in response to the unique natural setting of the area, when in conjunction with a hotel, motel or lodge."Zoning Regulations , § 92.030(C)(5). Plaintiffs assert that the word "conjunction" means "occurring together in time or space," citing the definition of that word in Merriam-Webster's Dictionary. Thus, they argue, a separate "stand-alone" restaurant, meaning one not attached to the Lodge itself, is not permitted by the zoning regulations because it is not together in time and space with the Lodge.
The argument fails because the word "conjunction," on its own, has a different meaning than the commonly used phrase "in conjunction with." To be sure, as Plaintiffs point out, dictionaries define conjunction to mean "occurring together in time or space." But that is because we use that word to describe things like celestial bodies that are aligned at certain times in the night's sky. By contrast, these dictionaries (including the dictionary cited by Plaintiffs) separately define the phrase "in conjunction with" to mean "in combination with" or "together with." Merriam-Webster Dictionary (11th. ed. 2014).
Here, the lakeside restaurant unquestionably is used "in combination with" or "together with" with the Lodge itself. The record from this zoning proceeding shows that a key purpose of the restaurant is to provide dining for guests of the Lodge. It is designed to function as part of the overall Lodge Property and it serves a purpose that is typical for dining establishments located on the property of a resort lodge. Thus, the trial court properly determined that the lakeside restaurant would be used "in conjunction with" the Lodge itself.
Plaintiffs also argue that, even if the restaurant is used "in conjunction with" the Lodge, it cannot be located in a separate building because the zoning regulations only permit "one principal building and its accessory buildings." Plaintiffs observe that the regulations define "accessory building" to mean "a detached building subordinate to the principal building on a lot and used for purposes customarily incidental to the principal building." Zoning Regulations , § 92.005. Thus, they argue, a separate restaurant adjacent to the Lodge cannot be an "accessory building" because its purpose is not subordinate or incidental to the Lodge.
Even if we were to assume the restaurant does not fit the general definition of the term "accessory building" in this context (the Lodge and the Town dispute this point), there are several reasons why this argument still fails. For example, the specific provision authorizing the restaurant, which permits "restaurants, golf courses, and other uses designed in response to the unique natural setting of the area," presumes that these other uses might be at locations away from the lodge, hotel, or motel structure, so as to benefit from the "unique natural setting." Id. § 92.030(C)(5). It would be hard to construct a golf course inside a motel building, for example. The same is true for a restaurant (or similar permissible uses) that need a separate location and separate structures to fully take advantage of the scenic views of Lake Lure.
In any event, the portion of the zoning regulations addressing conditional districts states that a general development plan in a conditional zoning application must show the "general location, orientation, and size of principal structures ." Id. § 92.019(A)(3)(b)(2) (emphasis added). Plaintiffs have not identified any competing language that limits the number of principal structures in this type of conditional zoning to only one. Accordingly, the trial court properly concluded that the provisions permitting the lakeside restaurant did not violate Section 92.019 of the Town's Zoning Regulations.
V. The Offsite Parking
Finally, the Lodge argues that the offsite parking provision in the ordinance was a valid exercise of the Town's conditional zoning authority and not a rezoning.
The trial court determined that under the ordinance "a previously forbidden commercial parking use is being allowed on the two parcels, resulting in both a change in the Zoning Regulations to allow such commercial use within an R-1 District, and a rezoning of the two specific R-1 District parcels to allow such commercial use thereon." In other words, the trial court determined that, when the conditional zoning ordinance changed the offsite parking requirements on the Lodge Property, it effectively rezoned other properties to permit commercial parking without any notice or procedural protections.
We agree with the trial court's determination. But understanding why that determination is correct requires a closer examination of the zoning regulations in effect before the Town enacted the challenged ordinance.
First, and most importantly (and, to be fair, rather counterintuitively), the Town's generally applicable zoning regulations permit commercial parking in residentially zoned areas. Specifically, the regulations permit commercial parking in residential areas when an adjoining commercial business lacks space on its own property:
Location on Other Property. If the required automobile parking spaces cannot reasonably be provided on the same lot on which the principal use is conducted, such spaces may be provided on other off-street property provided such property lies within 400 feet of the main entrance to such principal use.
...
Extension of Parking Space Into a Residential District. Required Parking space may extend up to 120 feet into a residential zoning district, provided that:
(1) the parking space adjoins a commercial district; and
(2) has its only access to or fronts upon the same street and is adjacent to the property in the commercial district for which it provides the required parking space; and
(3) is separated from abutting properties in the residential district by a 15 foot wide buffer strip densely planted with evergreens which at maturity will be at least six feet in height.
Id. § 92.103 (B)-(C)(1)-(3).
Thus, under the Town's general zoning regulations, there are many residential properties throughout the Town that could be used for parking by an adjoining commercial property. If the challenged conditional zoning ordinance had merely authorized the Lodge Property to similarly use those properties for offsite parking-a use already permitted on those properties by the Town's existing zoning regulations-then the newly enacted ordinance would not be a de facto rezoning of those other properties.
But the conditional zoning ordinance does more than that. The challenged parking provision also removed the requirement that offsite residential parking must adjoin a commercial district and that the parking cannot extend more than 120 feet into a residential district:
a. Parking
1) Parking space requirements shall be reduced as stated on the General Development Plan due to the shared nature of the uses and not the sum of the requirements of the various uses as required by § 92.103(E) of the ZR.
2) As an accessory use, offsite parking shall be allowed at distances greater than the 400 feet allowed by § 92.103(B) of the ZR.
3) As an accessory use, offsite parking may extend more than 120 feet into a residential zoning district and need not adjoin a commercial district as required by § 92.103(C) of the ZR.
Lake Lure Ordinance No. 15-12-22 § 4.a.(1-3) (emphasis added).
This emphasized, third portion of the offsite parking provision would permit the Lodge to use other residential property as offsite parking in situations where that was not a permissible use of that property under the generally applicable zoning regulations. We agree with the trial court that this provision, because it changes the permissible uses of those other properties, is a rezoning that entitled those property owners to notice and other procedures or rules applicable to zoning changes. That did not occur here, and thus this particular provision is invalid. George v. Town of Edenton , 294 N.C. 679, 687, 242 S.E.2d 877, 882 (1978).
The trial court also determined that the provision permitting offsite parking "at distances greater than the 400 feet" from the Lodge was invalid because it permitted the Lodge to use remote parking "established anywhere without any relationship to the location of the Conditional District." This, the trial court concluded, was "an arbitrary and unreasonable change having no relationship to meeting the required parking needs of the Conditional District."
But there is nothing arbitrary or unreasonable about the Town's decision to permit more distant remote parking for this property. Far from it, the record indicates that Town officials understood a vital fact about the Lodge and its neighboring properties: they are scenic, lakeside properties whose appeal lies in retaining as much of their natural setting as possible. If commercial parking for the Lodge could be located only on adjoining residential properties, and not those further away from the lake, it could mean paving over some portion of this scarce, scenic resource to make a parking lot-either on the Lodge's own property or by purchasing the adjoining properties and seeking to use them for that purpose. The Town's decision to relax the parking restrictions on the Lodge Property thus was neither arbitrary nor unreasonable-it was designed to preserve Lake Lure's appeal while also advancing the Town's long-term plan and vision for the community.
Accordingly, we reverse the trial court's determination that Section 4.a.2 of the Conditional Zoning ordinance, permitting remote parking at distances greater than the 400 feet from the property, is invalid. We affirm the trial court's determination that Section 4.a.3, which removed the requirement that offsite parking adjoin a commercial district and not extend more than 120 feet into the residential district, is invalid.
Finally, Plaintiffs argue that these offsite parking provisions cannot be severed from the remainder of the ordinance and, thus, if any portion of them is invalidated, the entire ordinance should be struck down. We reject this argument.
If unlawful portions of an ordinance "are stricken out, and that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, [the ordinance] must be sustained." Hobbs v. Moore County , 267 N.C. 665, 677, 149 S.E.2d 1, 9 (1966). Here, the record demonstrates that the Town intended to loosen the parking restrictions on the Lodge Property and chose several alternative means to do so, including reducing parking space requirements by sharing spots for both the lodging and dining uses and permitting parking at remote locations further from the Lodge than the generally applicable zoning regulations permitted. Thus, the remainder of the conditional zoning regulations are still effective in some form even with Section 4.a.3 removed.
Moreover, given the Town's long term plan for the Lodge Property, there is no evidence indicating that, without the provisions in Section 4.a.3, the Town would not have wanted the remainder of the conditional zoning ordinance to remain in effect. Thus, the trial court did not err when it determined that it could invalidate this particular parking provision without invaliding the ordinance as a whole.[1]
Conclusion
We reverse the portion of the trial court's order concluding that Section 4.a.2 of the challenged conditional zoning ordinance is unlawful. We affirm the remainder of the trial court's order.
REVERSED IN PART; AFFIRMED IN PART.
Report per Rule 30(e).
Judges HUNTER, JR. and ZACHARY concur.

Plaintiffs also argue that the trial court improperly considered affidavits from the Town that contained inadmissible hearsay. We are not persuaded that the trial court's consideration of these affidavits was improper but even if we ignored the allegedly inadmissible statements in these affidavits, the result of our analysis in the case would be the same.